UNITED STATES, Appellee,

v.

Daniel L. BARTLEY, Airman First Class,
U.S. Air Force, Appellant.

No. 95–0342.
Crim.App. No. 30605.

U.S. Court of Appeals for
the Armed Forces.

Argued June 4, 1997.

Decided Sept. 24, 1997.

For Appellant: *Major Gerald R. Bruce*
(argued); *Lieutenant Colonel Kim L. Shef-
field* (on brief); *Colonel Jay L. Cohen* and
*Captain Mark J. Simms.*

For Appellee: *Major LeEllen Coacher* (ar-
gued); *Colonel Theodore J. Fink* and *Lieu-
tenant Colonel Michael J. Breslin* (on brief);
*Colonel Jeffery T. Infelise* and *Major Jane
M.E. Peterson.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by a general court-
martial composed of officer and enlisted
members at Norton Air Force Base, Califor-
nia, in February 1993. Pursuant to his pleas,
appellant was found guilty of absence without
leave, wrongful use of cocaine, wrongful use
of marijuana, and wrongful appropriation of

an automobile, in violation of Articles 86, 112a, and 121, Uniform Code of Military Justice, 10 USC §§ 886, 912a, and 921, respectively. Appellant also pled guilty to the lesser-included offense of wrongful appropriation but was found guilty of larceny in violation of Article 121. He was sentenced to a bad-conduct discharge, confinement and partial forfeitures for 12 months, and reduction to the lowest enlisted grade. There was a pretrial agreement that the convening authority would disapprove any confinement in excess of 36 months. The convening authority approved the sentence as adjudged. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. On November 20, 1995, this Court ordered the court below to

> conduct further factfinding or otherwise obtain evidence to determine whether the decision to prosecute, the forwarding recommendations, or the deliberations of the court members were affected by unlawful command influence; whether any witnesses were deterred from testifying; and whether waiver of the command influence issue was part of the negotiation of a plea agreement. *See United States v. Lewis*, 42 MJ 1, 6 (1995) ("A Court of Criminal Appeals has discretion ... to determine how additional evidence, when required, will be obtained, *e.g.*, by affidavits, interrogatories, or a factfinding hearing.").

43 MJ 426–27.

After considering affidavits and the record of trial, the court below again affirmed the findings and sentence. We granted review of the following issues:

## I

WHETHER THE AGREEMENT BETWEEN A REPRESENTATIVE OF THE CONVENING AUTHORITY AND TRIAL DEFENSE COUNSEL NOT TO RAISE A DEFENSE MOTION REGARDING UNLAWFUL COMMAND INFLUENCE, WHICH AGREEMENT WAS CONSIDERATION FOR THE CONVENING AUTHORITY TO ENTER INTO THE PRETRIAL AGREEMENT, VIOLATES PUBLIC POLICY AND REQUIRES REVERSAL OF THE UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS' AFFIRMANCE OF APPELLANT'S CONVICTION.

## II

WHETHER THE UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION WHEN, IN RESPONSE TO THE REMAND ORDER FROM THIS COURT TO "CONDUCT FURTHER FACTFINDING OR OTHERWISE OBTAIN EVIDENCE" ON A COMMAND–INFLUENCE ISSUE, IT RELIED SOLELY ON INCONCLUSIVE AFFIDAVITS ALREADY BEFORE THIS COURT PRIOR TO THE REMAND ORDER.

We also specified the following issues for review:

## I

WHETHER, BY RELYING ON THE THEN–EXISTING RECORD, WHICH CONTAINED CONFLICTING AND CLEARLY ERRONEOUS EVIDENCE, THE AIR FORCE COURT OF CRIMINAL APPEALS COMPLIED WITH THE MANDATE OF THIS COURT TO "CONDUCT FURTHER FACTFINDING OR OTHERWISE OBTAIN EVIDENCE" WITH RESPECT TO: (1) WHETHER THE DECISION TO PROSECUTE WAS AFFECTED BY UNLAWFUL COMMAND INFLUENCE; (2) WHETHER THE FORWARDING RECOMMENDATIONS WERE AFFECTED BY UNLAWFUL COMMAND INFLUENCE; (3) WHETHER THE DELIBERATIONS OF THE COURT MEMBERS WERE AFFECTED BY UNLAWFUL COMMAND INFLUENCE; (4) WHETHER ANY WITNESSES WERE DETERRED FROM TESTIFYING BECAUSE OF UNLAWFUL COMMAND INFLUENCE; OR (5) WHETHER WAIVER OF THE COMMAND–INFLUENCE ISSUE WAS PART OF THE NEGOTIATIONS OF A PLEA AGREEMENT.

## II

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION BY CONCLUDING THAT THE POSTER "WHO'S KIDDING WHOM" DID NOT CONSTITUTE UNLAWFUL COMMAND INFLUENCE WITHOUT CONDUCTING FURTHER FACTFINDING OR OTHERWISE OBTAINING EVIDENCE ON THE ISSUE OF UNLAWFUL COMMAND INFLUENCE.

For the reasons contained herein, we reverse the decision of the court below.

### FACTS

Appellant alleges that there was a *sub rosa* agreement between trial and defense counsel that defense counsel would not make a motion based on unlawful command influence and, in exchange, appellant would receive a favorable pretrial agreement. The subject of the motion concerning command influence is a poster that says, "Who's Kidding Whom?" signed by Major General [now Lieutenant General] Richard J. Trzaskoma, United States Air Force, who was the convening authority in appellant's case. *See* Appendix at 188. This poster was located on the wall of the waiting room in the convening authority's office. The poster lists a number of "myths" about drug abuse, including the following: "Off–Duty Activities Should Not Affect EPR [Enlisted Performance Report] Evaluations"; "Drug Abusers Still Can Be Considered Well Above Average Military Members"; and "Drug Abusers Can Be Trustworthy, Dependable Airmen."

At appellant's trial, the judge asked the defense if there were any motions. The only motion raised pertained to illegal pretrial confinement. Later, the following exchange took place regarding the pretrial agreement:

MJ  Now, the last paragraph says that this document and Appendix A include all the terms of the pretrial agreement. But there are *at least a couple* of things that I am aware of that we need to discuss. One of them is that—and I presume it's in Appendix A—that the Government has agreed that if your pleas to the other offenses are accepted, that they're going to drop Charge I and its two specifications. Is that right?

IMC[*]  That's actually contained in the sentence immediately preceding Airman Bartley's signature, Your Honor.

MJ  Okay. Thank you. And the other one is that your counsel earlier indicated that you had agreed with the convening authority not to enter any motions, other than the one [illegal pretrial confinement] that I've already ruled on. Is that right?

DC  Yes, Your Honor.

MJ  Now, Airman Bartley, with that inclusion, does this document include ... or is this document, *plus that agreement about motions,* the entire agreement between you and the convening authority?

ACC  Yes, Your Honor.

MJ  Okay. Do counsel for both sides agree with my interpretation of the terms of the PTA?

TC  The United States does.

DC  The defense does, Your Honor.

(Emphasis added.)

Appellant maintains that there was an agreement between trial defense counsel and the convening authority not to raise the unlawful-command-influence issue. Appellant bases this contention on the fact that a motion had already been written, a representative of the convening authority (Mr. Parrott) had discussed this issue with trial defense counsel, and the motion may have been faxed to Mr. Parrott. Appellant cites *United States v. Kitts,* 23 MJ 105 (CMA 1986), and *United States v. Weasler,* 43 MJ 15 (1995), for the proposition that it is against public policy to agree in a pretrial agreement not to raise an issue of unlawful command influence.

Prior to the lower court's first opinion in this case, several individuals submitted affidavits addressing the alleged *sub rosa* agree-

* Individual Military Counsel.

ment. A summary of the affidavits is as follows.

The affidavit of Captain Kurlander, Individual Military Counsel for appellant at trial, states that he observed the "Who's Kidding Whom?" poster on then-Major General Trzaskoma's waiting room wall. Captain Kurlander drafted a motion on unlawful command influence based on the poster. Then he "learned" that Major General Trzaskoma had "ceased to be [the general court-martial convening authority] 2 or 3 days before the start of trial" and, because he did not believe he had a "sure-fire winner" to raise at trial, Captain Kurlander sought a guilty plea for his client. The lower court noted that this was incorrect, probably a memory problem, and that Major General Trzaskoma remained the convening authority throughout appellant's entire case. Unpub. op. at 4. Kurlander discussed the command-influence issue with Mr. Parrott, who was then with the 22d Air Force Legal Office, and Captain Snider, the area defense counsel who represented appellant at his Article 32, UCMJ, 10 USC § 832, investigation and at trial. Kurlander states, "I believe that 22 AF was concerned enough about the defense raising the motion—whatever the 'winnability' of the motion was—that they were more willing to consider a pretrial agreement than they would have been otherwise."

Captain Snider stated in her affidavit that she

> was present during discussions Capt Kurlander had with the trial counsel, Capt Renee Bennett, on this issue. While Capt Kurlander discussed the case by telephone with the legal office at the numbered Air Force, I was listening to Capt Kurlander's part of the conversation, where he again discussed this issue. Part of the inducement for the Convening Authority to enter into the agreement was that we dropped this motion.

Mr. Gregory Parrott's duties included "staffing military justice actions to the General Court–Martial Convening Authority." He recalls "staffing an Offer for Pretrial Agreement in the general court-martial" in appellant's case. Mr. Parrott's affidavit states that neither the Convening Authority nor the Acting Staff Judge Advocate had any knowledge of potential unlawful command influence and that the Staff Judge Advocate was either on leave or off-station and not consulted in this case. He further states that he did not recommend a plea agreement because of the unlawful-command-influence issue.

Without considering any evidence other than the record of trial and the post-trial affidavits, the court below in an opinion dated December 11, 1995, stated, "[W]e are convinced that the poster 'Who's Kidding Whom' does not constitute unlawful command influence." Unpub. op. at 4. The poster did not address command influence or suggest a punishment but urged that "[r]ehabilitation is a proper goal of our justice system, but i[t] is not the 'only' goal. We should try to return to duty members who show real promise for further service. However, the military does not provide a perpetual rehabilitation service for social misfits." In addition, the poster recognized that the Air Force does not have the resources to "restore every member."

The Court of Criminal Appeals explained that it did not order a hearing pursuant to *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), or additional affidavits because the affidavits which that court already had from the attorneys "are weak on specific details. . . . The passage of time and its effect on memories also influenced our decision to evaluate the issue on the record. . . ." The lower court gave "great weight to the documentary evidence recognizing that after the passage of over two and one-half years since trial, it is likely that memories have faded." Unpub. op. at 4.

The Court of Criminal Appeals found that "[n]either Mr. Parrott [former attorney-advisor at 22d Air Force] nor anyone else in the legal office had any discussion with General Trzaskoma [the convening authority] concerning the pretrial agreement. . . . Mr. Parrott did not discuss the possibility of an unlawful command influence motion in this case with the staff judge advocate, the acting staff judge advocate, or the convening au-

thority." *Id.* at 2–3. The court further found the following: none of the filed documents referred to the possible command-influence motion; the pretrial agreement did not require waiver of any motion as a condition (although defense counsel stated before entering the plea that "for the purpose of entering into a pretrial agreement, the defense did specifically agree not to raise any other specific motions that we had contemplated"); and there was no mention of unlawful command influence at trial or in post-trial submissions. *Id.*

## DISCUSSION

This Court has been diligent in guarding against unlawful command influence. *See, e.g., Weiss v. United States,* 510 U.S. 163, 179–81, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994). The present case, as conceded by the Government at oral argument, involves a *sub rosa* agreement between the prosecution and the defense not to raise an issue concerning alleged unlawful command influence.

Counsel may have hesitated to discuss waiver of command influence on the record because our opinion in *United States v. Weasler, supra,* had not yet been issued. It would have been preferable for counsel to follow the rules established by the Manual for Courts–Martial, United States (1995 ed.), and our case law.

■ To ensure servicemembers are afforded their constitutional and statutory rights and to ensure finality of judgments, military law requires detailed inquiries concerning pretrial agreements and guilty pleas. To ensure the voluntariness of pleas and to prevent improper terms from being imposed as part of a pretrial agreement, this Court has held that

the military judge must assure on the record that the accused understands the meaning and effect of each provision in the pretrial agreement; as well as make sure that the written agreement encompasses all the understandings of the parties and that they agree with his interpretation of the plea bargain.

*United States v. Jones,* 23 MJ 305, 308 (CMA 1987), citing *United States v. Green,* 1 MJ 453 (CMA 1976). Additionally, the judge must ensure that his or her interpretation of the agreement comports with counsel's interpretation. *United States v. Jones, supra,* citing *United States v. King,* 3 MJ 458 (CMA 1977). These *Green/King* requirements are codified in RCM 910(f)(4), Manual, *supra.*

■ Pretrial agreements must be in writing and signed by the accused and defense counsel. RCM 705(d)(2). Failure to place the terms of the pretrial agreement in writing runs counter to the procedural regularity set up by this Court to guarantee constitutional rights and ensure finality of judgments.

■ The *Green/King* requirements and RCM 910 are designed to prevent unwritten *sub rosa* agreements that would violate public policy. RCM 910(f)(3) states:

*Disclosure.* If a plea agreement exists, the military judge shall require disclosure of the entire agreement before the plea is accepted, provided that in trial before military judge alone the military judge ordinarily shall not examine any sentence limitation contained in the agreement until after the sentence of the court-martial has been announced.

In both *United States v. Rivera,* 46 MJ 52, 53 (1997), and *Weasler,* 43 MJ at 16, the pretrial agreements were in writing and disclosed as part of the providence inquiry.

The poster at issue, seemingly written by a lawyer, seeks to negate many defense arguments in favor of rehabilitating drug users such as appellant. Even so, defense counsel did not explore the poster's impact on the members during *voir dire,* though the poster was prominently displayed on the wall at the Norton Air Force Base legal office. Questions on *voir dire* about the poster would have required the judge, who may have known about the agreement, to examine the command-influence issue on the record. However, everyone stayed clear of the subjects mentioned in the poster.

Appellant apparently believed he needed a cap on the maximum punishment for his offenses, and he could not risk contesting the charges without a pretrial agreement. We

are not convinced beyond a reasonable doubt, however, based on this record, that the command influence issue did not induce the guilty plea.

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge COX and Judges SULLIVAN, GIERKE, and EFFRON concur.

## APPENDIX

 # WHO'S KIDDING WHOM?

Myths die hard. Those who cling to myths often are unencumbered by knowledge or insight. I am deeply concerned that many of our people persist in espousing a number of myths incompatible with Air Force concepts of discipline and justice. Seven of the most persistent myths are:

### 1. DUTY PERFORMANCE REPRESENTS THE PREEMINENT CRITERION IN EVALUATING SUBORDINATES

In fact, duty performance is only one of many important criteria. Others include military bearing and behavior, adherence to military standards and acceptance of responsibility consistent with rank. An undisciplined, unprofessional collection of workers, however individually talented, cannot sustain a military organization.

### 2. OFF-DUTY ACTIVITIES SHOULD NOT AFFECT EPR EVALUATIONS

An alarmingly large number of supervisors claim "If I don't see my personnel away from the job, I can't evaluate their off-duty activities and shouldn't consider those activities in my evaluations." That rationale is a convenient excuse to ignore plainly, unacceptable off-duty behavior, from drunk driving to drug abuse, from fraternization to financial irresponsibility. Military members are on duty 24 hours a day and judged by the civilian community on that basis. Performance ratings in the area of "adaptability to military life" and "bearing and behavior" both contemplate after-duty performance, as well.

### 3. DRUG ABUSERS STILL CAN BE CONSIDERED WELL ABOVE AVERAGE MILITARY MEMBERS

Some drug abusers may be among the best of their peers in performance of duties, professional appearance and working relationships. Bear in mind, however, that these same drug abusers also have made a conscious decision to flaunt military authority and violate the law. They jeopardize the safety of their co-workers and national security. Nonetheless, some supervisors continue to rate personnel involved in drug related offenses as deserving a "5" EPR and among the top 10 percent of their peers. By its definition, drug abuse should preclude such high ratings.

### 4. ABUSES INVOLVING SMALL AMOUNTS OF DRUGS ARE NOT SERIOUS OFFENSES

Some of our people believe that the Air Force overreacts to "minor" drug offenses involving "small amounts" of marijuana or "experimentation" with drugs. Unfortunately a "small amount" of any illicit drug, including marijuana, can severely compromise military readiness. The minor drug abuser is no less subject to censure than the petty thief.

### 5. DRUG ABUSERS CAN BE TRUSTWORTHY, DEPENDABLE AIRMEN

Whatever their possible merits, drug abusers are not trustworthy. Each instance of drug abuse is a knowing, deliberate decision to violate Air Force regulations and military law. A person who swears allegiance to laws of the land and then violates them at his or her convenience is unworthy of our trust.

### 6. SKILLED AIRMEN ARE TOO VALUABLE TO LOSE DUE TO OFF-DUTY MISCONDUCT

"Sergeant ———— is the best worker I have. I need Sergeant ———— back or his unit may fall apart." In truth, no one is indispensable. Many bright, loyal, young Americans are waiting in line to enter the Air Force. We can ill afford to keep them waiting in order to spare criminals in our organization.

### 7. ANYONE WHO CAN BE REHABILITATED, SHOULD BE

Rehabilitation is a proper goal of our justice system, but is is not the "only" goal. We should try to return to duty members who show real promise for further service. However, the military does not provide a perpetual rehabilitation service for social misfits. Our overall mission is one of national security. We have neither the time nor the resources to restore every member who has chosen to violate our laws, then wants to remain in the Air Force.

### SUMMARY:

In Summary, a number of dangerous myths have permeated the ranks of our "middle managers." The Air Force has standards which must be enforced in order to protect our country. When we decline to enforce these standards, discipline collapses and inevitably our mission is jeopardized.

RICHARD J. TRZASKOMA, Major General, USAF
Commander

22AFVA 111-1  August 1990
Supersedes 22AFVA 111-1, 1 May 88
Distribution: X (As determined by OPR)