UNITED STATES, Appellee,

v.

Anthony L. SHERMAN, Hospital Corpsman Second Class, U.S. Navy, Appellant.

No. 98–0489.
Crim.App. No. 96–0840.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 9, 1999.

Decided July 15, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and GIERKE and EFFRON, JJ., joined.  CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Captain Curtis M. Allen*, USMC (argued); *Lieutenant Commander R.C. Klant*, JAGC, USN (on brief); *Lieutenant Lisa C. Guffey*, JAGC, USNR, and *Lieutenant Syed N. Ahmad*, JAGC, USNR.

For Appellee: *Lieutenant Janice K. O'Grady*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge SULLIVAN delivered the opinion of the Court.

On October 18, 1995, appellant was tried by a special court-martial composed of a military judge sitting alone at Marine Corps Base, Quantico, Virginia.  Pursuant to his pleas, he was found guilty of 2 specifications of disrespect to a commissioned officer, assault with a dangerous weapon, wrongful discharge of a firearm, and communicating a threat, in violation of Articles 89, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 889, 928, and 934, respectively.  He was sentenced to a bad-conduct discharge, 150 days' confinement, forfeiture of $200.00 pay per month for 5 months, and reduction to pay grade E–1.

On January 4, 1996, the convening authority approved the sentence as adjudged.  Pursuant to a pretrial agreement, however, he suspended confinement in excess of 100 days for 12 months from the date of trial.  The Court of Criminal Appeals affirmed the findings of guilty and sentence in an unpublished opinion.  On January 16, 1998, that same court denied appellant's requests for reconsideration and a post-trial evidentiary hearing.

On August 17, 1998, this Court granted review on the following issues:

## I

WHETHER APPELLANT'S PRETRIAL AGREEMENT VIOLATED PUBLIC POLICY BECAUSE IT CONTAINED AN ILLEGAL *SUB ROSA* TERM THAT REQUIRED APPELLANT TO WAIVE MOTIONS OF UNLAWFUL COMMAND INFLUENCE AND ILLEGAL PRETRIAL CONFINEMENT.

## II

WHETHER THE LOWER COURT EXCEEDED ITS FACTFINDING POWERS UNDER ARTICLE 66(c), UCMJ, BY RESOLVING A MATERIAL FACTUAL DISPUTE WITHOUT ORDERING AN EVIDENTIARY HEARING.

We hold that a *DuBay*[1] hearing is required to determine whether there was a *sub rosa* agreement between the parties not to raise issues of unlawful command influence and the legality of appellant's pretrial confinement. *See United States v. Payton,* 23 MJ 379 (CMA 1987); *see generally United States v. Ginn,* 47 MJ 236 (1997).

Appellant was placed in pretrial confinement on July 9, 1995, the date of the alleged offenses, and remained there until October 17, 1995, approximately 100 days. At trial, he pleaded guilty to the charged offenses, which concerned a violent disagreement with his command superiors at an off-duty barbecue for command members at his house. No motions were made by defense counsel, prior to appellant entering his guilty pleas or subsequent thereto, concerning unlawful command influence or unlawful pretrial confinement. Appellant also told the military judge that "the written agreement [was] the entire agreement between [him] and the convening authority."

On April 7, 1997, appellant sent a letter to his appellate defense counsel alleging that unlawful command influence had affected his trial and that his pretrial confinement was illegal. He further stated that he understood, "if we brought up these issues we would lose the pretrial agreement, and the prosecution would bring new charges to keep

me confined for another 120 days." He detailed in his letter his basis for concluding that unlawful command influence occurred in his case and why his two pretrial confinement hearings were also unlawfully influenced by command authorities. He then concluded:

> Again, I wanted to raise these issues, but the deal offered by the prosecution was to agree to the written provisions of the pretrial agreement, and in addition, to not bring up the issue of unlawful command influence or the IRO/unlawful confinement issue, or I would not get the deal. At the time, under the duress of confinement, family separation at a time of great stress and unfair treatment without recourse, and the possibility of redress at the appellate court level, I did give in to my command's manipulation of the system, and agreed not to raise the motions.

Trial counsel submitted an affidavit in response to appellant's letter. He stated:

> 2. I was not involved in the Initial Review Officer (IRO) hearing, per RCM 305. I am aware that there were two hearings, the first of which resulted in a decision by the IRO to release the accused from pretrial confinement, and the second of which resulted in the same IRO deciding to retain the accused in pretrial confinement.
>
> 3. I recall that the defense felt that there was command influence involved in the IRO hearing process. They also felt that the accused was being held in maximum confinement status unnecessarily. The defense indicated that they might bring motions to this effect.
>
> 4. *I do not recall there being an unwritten, or sub rosa, agreement that prevented the defense from bringing these motions.* As the trial counsel, I discussed with the defense counsel whether the defense would raise these motions, and reported that the Government needed to know this in order to know how to proceed. That did not, however, mean that there would be no pretrial agreement if the defense raised these issues.

---

1. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

5. I note that a pretrial agreement, in which the Government agreed to take the case to a special court-martial vice a general court-martial in return for the accused's pleas of guilty, is dated 11 October 95. As of that date, the Government was obliged to fulfill its portion of the pretrial agreement, barring misconduct by the accused. The defense was free to raise the issues it was concerned with without fear of losing the benefits of the agreement. The defense did not raise any such issues.

(Emphasis added.)

Defense counsel submitted an affidavit in response to trial counsel. It said:

I have read Anthony Sherman's letter of 7 April 1997. I generally agree with the content of the letter with the exception of the fifth sentence of the first paragraph, and any portions of the fourth sentence of the same paragraph to the extent it/they imply that defense counsel promised that certain issues would not be considered to have been "waived" on appeal. Additionally, with regard to the fifth paragraph, I agree with the general assertion of illegal command influence inasmuch as it alleges illegal command influence with regard to Sergeant Plum.

I have read Captain Harper's affidavit of 21 July 1997 and provide the following statement in response:

*Specifically regarding paragraph 4: Captain Harper implied that he might not recommend a pretrial agreement if the motions were raised and also that LtCol DeCamp might not enter a pretrial agreement if motions were raised.*

Specifically regarding paragraph 5: During the negotiation of the pretrial agreement Captain Harper informed me that a proposed pretrial agreement was contingent upon going to trial on a specified day. When informed of the possibility of the filing of defense motions, Captain Harper stated that filing motions would result in delay of the trial and would be cause for the convening authority to reevaluate the offer and to consider filing additional assault charges. Additionally, his assertion that the pretrial agreement was binding as

of the date it was signed is incorrect. The Government may withdraw from a pretrial agreement for any reason up until the time of performance by the accused.

At the time of the negotiations Captain Harper was aware of the general nature of the motions—illegal command influence and illegal pretrial confinement and that the convening authority's, LtCol DeCamp, action formed the basis for both motions.

(Emphasis added.)

The Court of Criminal Appeals considered this material and affirmed on the basis of appellant's purported forfeiture of these claims by failing to make appropriate motions. It later reconsidered and again affirmed, stating:

2. After reviewing the record of trial and the affidavits submitted by the appellant and his counsel, we remain confident that a post-trial evidentiary hearing is not required or appropriate in this case. *See United States v. Ginn,* 47 MJ 236 (1997). The appellant speculates that there was an "implied" understanding not to raise any motions. *However, he, his trial defense counsel, and the trial counsel expressly stated on the record that there were no such sub rosa agreements.* Record at 56. Moreover, nothing in the pretrial agreement prevented him from making any motion at trial. His failure to do so at the time of trial forfeited the issue on appeal. RULE FOR COURTS–MARTIAL 905(e), MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.). After refocusing on the facts and the law relevant to the appellant's first assignment of error, we conclude again that he is entitled to no relief.

(Emphasis added.)

— — —

As a starting point, we note that the affidavit submitted by trial counsel in this case raises a factual dispute as to the existence of a *sub rosa* agreement preventing the defense from raising pretrial motions alleging unlawful command influence and unlawful pretrial confinement. ("I do not recall.") *See United States v. Moore,* 28 MJ 366, 368 n. 6 (CMA

1989) (affidavit response of trial counsel not sufficiently complete). Moreover, defense counsel's affidavit provides an incomplete explanation as to whether appellant gave untruthful answers to the trial judge and, if so, whether defense counsel knew that these answers were untruthful. *See United States v. Boone*, 42 MJ 308, 313–14 (1995) (defense counsel's inadequate response to claim of ineffective assistance of counsel requires call for explanation). Finally, other matters suggesting unlawful command influence at this court-martial were raised by appellant's letter, which were not addressed by trial counsel. *See United States v. Henry*, 42 MJ 231, 237–38 (1995). ("[R]ecord suggests numerous potential lines of inquiry that cannot be answered with the information before us.").

In this context, we conclude that there are too many questions remaining that are unresolved in the record of this case for us to affirm it at this time. *See United States v. Payton, supra* (inconsistencies and omissions in the record of trial and post-trial attachments preclude affirmance). Therefore, we remand for a *DuBay* hearing on the following issues:

(1) Did LtCol DeCamp threaten the Initial Review Officer (a subordinate) that, unless he decided to keep appellant in confinement, DeCamp would get word up to the Commandant of the Marine Corps?

(2) Did LtCol DeCamp threaten appellant's wife with loss of base housing unless she cooperated with the prosecution of her husband?

(3) Were witnesses interfered with?

(4) At R. 56—was appellant telling the truth when he told the judge there were no agreements other than the written pretrial agreement?

(5) Did defense counsel knowingly remain silent and allow appellant to give an untruthful answer when appellant said no other agreements induced him to plead guilty?

(6) Were there any *sub rosa* agreements made with the defense that were outside the wording of the plea agreement?

*See United States v. Henry, supra.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to an appropriate special court-martial authority. That authority may refer the record to a special court-martial for a limited hearing on the matters noted above or, if he determines in his discretion that further proceedings are impracticable, dismiss the charges and forward an authenticated copy of his dismissal action to this Court. If a special court-martial is convened, the military judge, under the provisions of Article 39(a), UCMJ, 10 USC § 839(a), will conduct the limited hearing. At the conclusion of the proceedings, he will enter findings of fact and conclusions of law and then return the record and a verbatim transcript of the hearing directly to this Court.

CRAWFORD, Judge (dissenting):

I dissent because we have previously noted that, when a "military judge properly inquired and received assurances from appellant that no *sub rosa* agreements existed, we will not consider inconsistent post-trial assertions." *United States v. Muller*, 21 MJ 205, 207 (1986). Likewise, in *United States v. Miles*, 12 MJ 377, 379 (1982), this Court indicated that it will not consider post-trial affidavits submitted long afterward which indicate that an appellant did not understand the pretrial agreement he signed. Additionally, before this case was tried, we held in *United States v. Weasler*, 43 MJ 15 (1995), that unlawful command influence issues may be waived.

Appellant admitted that the pretrial agreement originated with him; that the plea was voluntary; and that the agreement included a waiver of any issue arising from the 3–day delay between service and referral. The judge then asked if there were any other agreements in the case. Appellant replied that there were not, as did both counsel. Appellant reiterated that the plea was voluntary and no one forced or threatened him to enter into the agreement. He stated that he had fully discussed the agreement with counsel and was satisfied that the agreement was in his own best interest.

Now, the defense asserts that there was a *sub rosa* pretrial agreement in this case. Appellant's defense counsel, Major Eric B. Stone, states that the trial counsel implied that there might not be a pretrial agreement if appellant decided to raise motions. Appellant himself states that his defense counsel told him they would "have to hide" the motions concerning improper confinement and unlawful command influence "from the Judge" in order to have a pretrial agreement.

This is not a case where there is a colorable claim of command influence that appears on the record, as in *United States v. Bartley*, 47 MJ 182 (1997). The fact that a trial counsel is aware of potential motions does not equate to the existence of a *sub rosa* agreement; nor would such a discussion between counsel indicate that a pretrial agreement would be withdrawn if those motions were raised. Candor with the tribunal requires that both parties be open and honest at the time of trial and not litigate these issues through post-trial affidavits. *See generally* 32 C.F.R. § 776.41 (1998) (Department of Navy Rule for Professional Conduct of Attorneys Practicing Under the Supervision of the Judge Advocate General).

For these reasons, I would affirm the decision of the Court of Criminal Appeals.