UNITED STATES, Appellee,

v.

Nicky A. THOMPSON, Master Sergeant,
U.S. Army, Appellant.

No. 99–0656.
Crim.App. No. 9600798.

U.S. Court of Appeals for
the Armed Forces.

Argued May 3, 2000.

Decided Aug. 31, 2000.

SULLIVAN, J., delivered the opinion of
the Court, in which CRAWFORD, C.J.,
GIERKE, and EFFRON, JJ., and COX, S.J.,
joined.

For Appellant: *William E. Cassara* (ar-
gued); *Captain Joshua E. Braunstein* (on
brief).

For Appellee: *Captain William J. Nelson* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Captain Mary E. Braisted* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During the spring of 1996, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Hood, Texas. Consistent with his pleas, he was found guilty of making a false official statement, assault and battery, fraternization, and adultery, in violation of Articles 107, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 928, and 934, respectively. Contrary to his pleas, he was found guilty of rape and indecent assault, in violation of Articles 128 and 134, UCMJ, 10 USC §§ 928 and 934, respectively. On May 1, 1996, he was sentenced to a dishonorable discharge, 9 years' confinement, total forfeitures, and reduction to pay grade E–1. The convening authority on January 10, 1997, approved the adjudged sentence. On April 2, 1999, the Court of Criminal Appeals affirmed the adjudged findings of guilty and the sentence in an unpublished opinion, and on July 14, 1999, it reconsidered its decision but again affirmed.

On February 2, 2000, this Court granted review on the following two issues of law:

I. WHETHER THE ARMY COURT ERRED WHEN IT RULED APPELLANT WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, DESPITE UNCONTESTED EVIDENCE OF THIS COUNSEL'S: (1) FAILING TO INTERVIEW WITNESSES, (2) FAILING TO CROSS–EXAMINE WITNESSES, (3) FAILING TO AGREE ON A DEFENSE STRATEGY, (4) ENTERING INTO AN ILLEGAL *SUB ROSA* AGREEMENT WITH THE TRIAL COUNSEL, (5) ENCOURAGING APPELLANT TO ENTER PLEAS INCONSISTENT WITH APPELLANT'S BEST INTERESTS AND THE DEFENSE STRATEGY, AND (6) PRO-CEEDING TO TRIAL DESPITE THE LACK OF PREPARATION.

II. WHETHER THE MILITARY JUDGE ERRED BY ABANDONING HIS IMPARTIAL ROLE AND BECOMING A PARTISAN ADOCATE FOR THE GOVERNMENT WHICH DENIED APPELLANT A FAIR TRIAL.

We hold that this case should be returned to the Court of Criminal Appeals to order affidavits from both civilian and military defense counsel or to order a *DuBay*[1] hearing on the question of ineffective assistance of counsel. *See United States v. Sherman,* 51 MJ 73 (1999); *United States v. Diaz–Duprey,* 51 MJ 168 (1999).

The Court of Criminal Appeals, 53 MJ 114, made the following findings of fact pertinent to the first granted issue. It said:

Appellant was married, the First Sergeant of a Military Police Company, had seventeen-plus years of active duty service, and a general technical (intelligence) test score of 128. His guilty pleas established that on three occasions, both in garrison and while deployed with his unit to Honduras, he sexually harassed two women under his supervision by improperly touching them.

A separate incident, involving a Specialist (SPC) R, led to appellant pleading guilty to making a false statement, fraternizing and adultery. However, he denied raping SPC R or committing any indecent assault upon her.

The essence of appellant's defense was to admit to lecherous activity toward vulnerable women, but deny that his conquest of SPC R was by force. The evidence showed that SPC R was highly intoxicated on the night in question and that appellant manipulated circumstances so that she would accept his offer of a ride to the barracks. Once in his car, and after appellant suggested going to get something to eat, he drove SPC R around the area, ending up on a secluded gravel road where he consummated sex with her.

---

1. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

In his statement to a Criminal Investigation Command agent, appellant denied having sex with SPC R. Deoxyribonucleic acid (DNA), and other forms of admissible evidence revealed that claim to be false. The evidence also showed that collateral claims made by appellant in the statement were false. Bruising on SPC R was consistent with her story and supportive of forced sexual activity. Appellant did not testify in his own defense.

Appellant was represented at trial by a civilian defense counsel, Mr. B., and detailed military trial defense counsel, Captain (CPT) P. During the course of presenting appellant's defense, counsel suffered adverse rulings by the military judge on several strenuously contested matters. The military judge also continuously injected himself into the proceedings. This included taking over questioning from counsel, shutting off presentations in the absence of objection, expressions of impatience and exasperation with counsel, and the making of condescending or berating comments about counsel's performance. While neither side was spared this conduct, CPT P bore the brunt of the judge's comments and his tendency to over control the proceedings.

Out of apparent frustration, CPT P increasingly resisted or questioned the military judge's actions and rulings. Not surprisingly, this generated several contentious exchanges with the judge. During those exchanges, CPT P repeatedly alluded to being "ineffective" or being forced into providing ineffective representation. She also claimed that the rulings rendered the defense unprepared or unable to prepare, and requested continuances to conduct research. However, when questioned further, CPT P was unable to specifically quantify her concerns and the military judge granted no delays. Mr. B. volunteered no comments concerning these statements and was not asked if they comported with his assessment of the situation.

Ultimately, however, the contentious atmosphere led Mr. B. to request that the military judge recuse himself from further participation in the trial. *See* Rules for Courts–Martial 902(a), 902(b)(1), 905. In discussing this request, he noted that appellant had expressed concern that the strained relations with the military judge might ultimately intimidate counsel, causing them to be less aggressive in defending his interests. However, appellant was not asked to address his concerns on the record.

When questioned about this, Mr. B. expressed no reluctance to contend with the military judge. However, when CPT P was asked her position, the following exchange occurred:

> MJ: Captain P[ ], do you believe that I've intimidated you?
>
> DC: Sir, I believe that you have done everything that you can to stop me . . . I will tell you that there is no question that I will think twice before telling you that [pause] before telling you [pause] before raising an issue before you because I will be yelled at. . . . I do feel that my ability to represent [appellant] has been impacted in this case because you're sitting on the case.
>
> MJ: I think then that you need to investigate, Captain P[ ], a new line of work.

This development induced the military judge to draw back and seek a degree of reconciliation with counsel as well as resolution of the pending motion. In doing so, he address his perception of his duties with respect to controlling the proceedings, expressed the view that both sides had been treated equally and then gave assurance that he had only respect for, and confidence in, CPT P's abilities and integrity. Notwithstanding these comments, CPT P reiterated that she "would think twice" in addressing matters to the judge. However, at no time did CPT P seek to withdraw as counsel for appellant. . . .

Unpub. op. at 2–4.

Before the Court of Criminal Appeals, appellant submitted an affidavit supporting his

post-trial claim of ineffective assistance of counsel. It stated:

AFFIDAVIT

I, Nicky A. Thompson, hereby make the following statement under oath. On 5 October 1995, I learned that I had been accused of rape. On 6 or 7 October 1995, I contacted Mr. Wilbert Byrd and scheduled an appointment, and retained him as lead counsel. Mr. Byrd's qualifications included a practice limited to military law, and being retired as the Regional Defense Counsel for Fort Hood, Texas. Mr. Byrd and I met approximately once a week in his office discussing developments in the case. Mr. Byrd was extremely optimistic about the outcome of the case. After Specialist Ramsey failed two polygraph examinations, Mr. Byrd assured me that the government would not go forward with the rape charge, as they couldn't prove it. This was especially true, he said, in light of Spec. Ramsey's numerous inconsistent statements.

I also had military counsel appointed to represent me, CPT Beth Pacella. I met with my two attorneys sporadically, as they said there was little or no progress on my case. We never discussed case strategy, either for trial, or for the Article 32 investigation. Prior to the Article 32 investigation, I was told that CPT Dexter [trial counsel] had been in my company area on a number of occasions, interviewing members of my unit. I told Mr. Byrd about this (he didn't know it,) and on numerous occasions gave him the names of people in the unit he should interview in regards [sic] my character, the incident in question, and Spec. Ramsey's reputation for dishonesty. *To my knowledge, neither of my attorneys ever went to my company area, or interviewed any of the witnesses I told them about. During the post-trial Article 39a session, I found out this was true, as both my lawyers admitted that they did not interview any of the alleged "victims." I also found out at this time that neither attorney had investigated Spec. Ramsey's medical condition, or any* *other facts that would be relevant to my defense.*

Whenever I would ask Mr. Byrd about the witnesses, he always assured me that the government would not take the rape charge to trial, so I shouldn't worry. It was only a few days before trial that Mr. Byrd advised me to plead guilty to several charges. He told me "If we give the government something, by being honest and accepting responsibility, the case will go in our favor." Again, the dominant theme was that the rape charge would not got to trial. During one of these meetings, CPT Dexter phoned Mr. Byrd while I was in his office. She said that if I would plead guilty to indecent assault, the government would agree to a pre-trial agreement for no more than ninety days confinement. I told Mr. Byrd that was difficult for me to do, because the incident with Spec. Ramsey was consensual. Mr. Byrd replied that I should not plead guilty to that charge and, therefore, could not accept the government's offer. I told Mr. Byrd I would take the ninety days for those charges I was pleading guilty to, but he said it wouldn't work. *Nonetheless, Mr. Byrd did advise me to plead guilty to several charges I did not believe I was guilty of.*

I would also like to point out at this time that, during pre-trial preparations, I was under prescription medication for depression. The medication was very strong and, at times, I did not understand what was going on during the pre-trial and trial stages. I relied heavily on my defense counsel. Although Mr. Byrd was lead counsel, CPT Pacella did most of the pre-trial work, and handled most of the trial herself. It got so bad that Col. Hodges, the military judge, mentioned it both during the trial and the post trial session. Judge Hodges repeatedly attacked and admonished CPT Pacella, to the point of where she was close to tears in court, and in tears out of court. I believe this caused her to be very apprehensive during the trial.

*During the article 32 investigation, Mr. Byrd was very ill prepared, and did not ask any relevant questions of Spec. Ram-*

*sey. This continued at trial.* Whenever I would ask him why, he would tell me "We don't want to attack the victim." This surprised me, as I told him she was not the victim. During both proceedings, Mr. Byrd seemed lost in regards to strategy and the line of questioning. It was obvious that very little preparation was put into my case. I firmly believe that if I were not under medication at the time, or if I knew a little more about the law, I would have realized that at the time.

The last time I met with Mr. Byrd was at the Fort Hood confinement facility. Mr. Byrd told me "If you raise ineffective assistance of counsel during the appeals, I'll understand why."

I have read the above statement, and agree with and understand its contents.

Nicky A. Thompson

[SSN]

(Emphasis added.)

The Court of Criminal Appeals affirmed the findings of guilty and the sentence in this case without ordering a responding affidavit from either civilian or military defense counsel. It found no defective performance by counsel based on the record before it and no abuse of discretion in the military judge's denial of a recusal motion.

We will address the issues in reverse order.

## MILITARY–JUDGE RECUSAL CLAIM

■ The first issue we will address in this case is whether the military judge erred when he refused to recuse himself as requested by the defense. (R. 535, 536, 542) The appellate court below found that "[t]he record of these proceedings is replete with examples of indecorum and the failure of the participants to maintain an appropriate judicial atmosphere. Much of the blame for this breakdown stems from the military judge's inappropriate and intemperate remarks to counsel on the record and his impatience with their efforts to try their respective cases." Unpub. op. at 4–5. We note, however, that "critical or disapproving . . . or even hostile" judicial remarks concerning defense counsel do not require a judge to recuse himself in the ordinary case. *See United States v. Cooper,* 51 MJ 247, 251 (1999). Appellant has not persuaded us that his case was extraordinary in this regard.

We have examined the record of trial in this case, in particular the portion of the record complained of by appellant. (R. 500–542.) They reveal that the military judge became concerned with military defense counsel's repeated statements on the record that she was "ineffective" and the impact these statements might have on appeal. (R. 500.) He was also aware that military defense counsel formerly worked at "Defense Appellate Division" and was admittedly knowledgeable in ways of preserving issues for appeal. (R. 538.) The portion of the record cited by appellant reflects efforts by the military judge to clarify and remedy previously asserted defense concerns where admissions of ineffectiveness were made. (R. 541–542.) While nerves may have become frayed during this give-and-take between the judge and defense counsel, we do not consider it extraordinary. *See Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (ordinary admonishments to counsel made during trial not disqualify judge).

■ Admittedly, the defense moved the military judge to recuse himself under RCM 902, Manual for Courts–Martial, United States (1995 ed.) ("a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned"). *Cf. United States v. Cooper, supra* at 251; *United States v. Acosta,* 49 MJ 14, 18 (1998). However, such defense action is but one factor to be considered in determining whether a reasonable person would conclude that doubt existed as to the impartiality of the military judge. *See United States v. Acosta, supra* at 18. Here, the record also shows that the judge was tough on trial counsel as well as defense counsel, and he made numerous rulings favorable to the defense. (R. 479, 735) Furthermore, the military judge expressly disclaimed any bias against military defense counsel (R. 539) and made substantial effort

to particularly address military defense counsel's concerns. Finally, the record shows repeated statements by defense counsel resisting the military judge's attempts to remedy previously asserted errors in this case. (*E.g.,* R. 553–59.) In these circumstances, we conclude that no clear error was made by the judge in refusing to recuse himself. *See United States v. Cooper, supra.*

## INEFFECTIVE–ASSISTANCE–OF–COUNSEL CLAIM

The next issue we will address is appellant's post-trial claim that his civilian and military defense counsel provided him ineffective assistance of counsel. *See generally Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He submitted a signed affidavit detailing his counsel's deficient conduct and asserting that it prejudiced his defense in this case. *See United States v. Ginn,* 47 MJ 236 (1997). The Court of Criminal Appeals accepted this affidavit, but it did not order an affidavit from either defense counsel prior to its decision denying appellant's post-trial claim. *See United States v. Lewis,* 42 MJ 1 (1995).

■ Appellant's affidavit makes several factual allegations that he offers in support of his claim of ineffective assistance of counsel. The most serious ones were:

(1) Neither military nor civilian defense counsel interviewed any witnesses in his unit identified by appellant as capable of providing testimony on his "character, the incident in question," or the victim's "reputation for dishonesty." They also "did not interview any of the alleged 'victims'" in this case or investigate the victim's medical condition or "other facts ... relevant to [his] defense."

(2) Civilian defense counsel advised appellant "to plead guilty to several charges" which appellant "did not believe" he "was guilty of."

(3) Civilian defense counsel was "ill-prepared" for trial "and did not ask any relevant questions of" the alleged victim as part of a trial strategy admitting guilt that appellant did not accept.

■ We note that these factual assertions, if true, would support a justiciable legal claim of ineffective assistance of counsel under our case law. *See United States v. Scott,* 24 MJ 186 (1987) (ineffective assistance of counsel existed for failure to interview potential defense witnesses identified by accused); *United ed States v. Sherman,* 51 MJ 73 (1999) (ineffective assistance of counsel to enter into illegal *sub rosa* agreement); *United States v. Diaz–Duprey,* 51 MJ 168 (1999) (ineffective assistance of counsel to admit guilt contrary to appellant's wishes). There remain too many factual questions concerning the effectiveness of their performance, unresolved on the record of trial, for us to summarily affirm this case.[2] *See United States v. Sherman, supra* at 76. Therefore, in our view, it is necessary that affidavits be sought from both defense counsel on appellant's factual allegations. *See United States v. Lewis, supra; see generally United States v. Ginn, supra.*

The decision of the United States Army Court of Criminal Appeals, as modified by the order of July 14, 1999, is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court, which may order affidavits from defense counsel and then decide whether to order a *DuBay* hearing, or the court may order a *DuBay* hearing. Article 67, UCMJ, 10 USC § 867 (1994), will apply after the court below renders a final decision.

---

2. We have considered the post-trial session in this case held to address several defense claims, including one that it was denied requested discovery by the Government. (R. 990–1064) (App. Exh. 49–51) It did not address the question of defense counsel's effectiveness, and we do not consider it adequate to resolve appellant's particular post-trial complaints on this basis. (R. 1042–43)