# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39247 (reh)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Ryne M. SEETO**
Captain (O-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 April 2021

———————————

*Military Judge:* Wesley A. Braun (arraignment); Bryon T. Gleisner.

*Approved sentence:* No punishment. Sentence adjudged 26 June 2019 by GCM convened at Robins Air Force Base, Georgia.

*For Appellant:* Major Benjamin H. DeYoung, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, LEWIS, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge LEWIS and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

At Appellant's original trial in July 2016, a military judge found Appellant guilty, in accordance with his pleas by exceptions and substitutions, of one specification of conduct unbecoming an officer and a gentleman in violation of

Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933.[1] A general court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification of indecent conduct in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2] The court-martial sentenced Appellant to a dismissal and confinement for ten months. The convening authority approved the adjudged sentence.

Upon review, this court set aside the findings of guilt and the sentence because there were substantial omissions from the transcript and the Government could not rebut the presumption of prejudice. *United States v. Seeto*, No. ACM 39247, 2018 CCA LEXIS 518, at *35 (A.F. Ct. Crim. App. 26 Oct. 2018) (unpub. op.). In addition, this court found the 277-day delay between sentencing and convening authority action violated Appellant's due process right to timely post-trial processing and review; accordingly, we held "[i]n the event [ ] a rehearing results in a finding of guilt, the convening authority may approve no sentence of confinement greater than 99 days." *Id.* This court authorized a rehearing and returned the record of trial to The Judge Advocate General for remand to the convening authority. *Id.*

The convening authority directed a rehearing by general court-martial on the set-aside charges and specifications. At separate hearings, Appellant was arraigned and the trial judge received several defense motions. After the military judge ruled on the motions, Appellant entered into a pretrial agreement (PTA) with the convening authority. Pursuant to the PTA, Appellant elected trial by a military judge alone and pleaded guilty by exceptions and substitutions to the charge and specification of conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ. In accordance with the PTA, the Government withdrew the excepted language as well as the charge and specification alleging indecent conduct in violation of Article 134, UCMJ. The military judge sentenced Appellant to a dismissal, confinement for four months, and forfeiture of $2,250.00 pay per month for four months. In accordance with the PTA, the convening authority dismissed without prejudice the withdrawn excepted language of the conduct unbecoming specification and the charge and specification of indecent conduct. In addition, in accordance with the PTA, the

---

[1] All references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2012 ed.).

[2] The court-martial found Appellant not guilty of one specification of attempted rape, one specification of aggravated sexual contact, and one specification of assault consummated by a battery in violation of Articles 80, 120, and 128, UCMJ, 10 U.S.C. §§ 880, 920, 928.

convening authority approved a sentence of no punishment[3] and credited Appellant with 235 days of confinement served pursuant to the sentence imposed by the original court-martial.

Appellant now raises five issues on appeal from his rehearing: (1) whether Appellant's guilty plea was improvident; (2) whether Appellant received ineffective assistance of counsel because trial defense counsel failed to advise him of the effect of his guilty plea with regard to waiver of appellate issues; (3) whether the charge and specification fail to state an offense; (4) whether the military judge erred in identifying the most similar analogous offense for Article 133, UCMJ, for sentencing purposes; and (5) whether the military judge erred in failing to grant a defense motion to dismiss for improper referral and unlawful command influence (UCI).[4] We have carefully considered issue (4) and we find it warrants neither further discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With regard to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

### A. The Offense

In November 2014, Appellant was a married Air Force captain (O-3) stationed at Robins Air Force Base, Georgia. Using a pseudonym, Appellant made contact with a civilian woman, BV, through a social media application used for dating. Appellant and BV chatted with each other for a few days through the application before exchanging phone numbers and continuing their dialog via text messages. Appellant did not reveal his real name to BV, nor the fact that he was married.

Appellant and BV arranged to meet at a club in Warner Robins, Georgia, on 27 December 2014; Appellant's spouse was out of town at the time. Appellant and BV drove separately to the club. They soon decided to go to a different club in Macon, Georgia, driving together in Appellant's vehicle. They left BV's vehicle at the first club with the understanding Appellant would bring BV back

---

[3] We retain jurisdiction over Appellant's rehearing notwithstanding his approved sentence of no punishment; once a Court of Criminal Appeals has jurisdiction of a case, "no action by a lower court or convening authority will diminish it." *United States v. Johnson*, 45 M.J. 88, 90 (C.A.A.F. 1996) (quoting *United States v. Boudreaux*, 35 M.J. 291, 295 (C.M.A. 1992)) (internal quotation marks and additional citation omitted).

[4] Appellant personally asserts issues (4) and (5) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

to it later that night. At the second club, BV spent some time dancing and so-cializing with Appellant, but also spent some time socializing with friends of hers she saw there. Eventually, at approximately 0200 on 28 December 2014, Appellant and BV left the club together.

On the drive back to Warner Robins, BV indicated she was tired and hun-gry. Appellant stopped to buy food for her. Afterward, Appellant invited BV to his house. BV declined, but Appellant told her that he was going to stop there anyway. When they arrived, Appellant parked in the garage and went inside the house. BV waited in the vehicle for "a few minutes" for Appellant to return; when he did not, she went inside. She found Appellant sitting on a couch, where he invited her to join him.

According to the stipulation of fact admitted at the rehearing:

> While spooning on the couch, [Appellant], slid his pants down, rolled on top of [BV] and attempted to kiss her, but she turned her head away. [BV] asked, "what are you doing?" [Appellant] replied, "I thought we were going to have sex." [Appellant] then stood up, adjusted the lights down, and returned to the couch. [BV later] told the [Sexual Assault Nurse Examiner] that, at this time, [Appellant] told her the two of them weren't leaving the home until they had sex. As he returned to the couch . . . [Appellant] got on top of [BV] and pulled her pants and underwear down. [BV] said, "no," and physically resisted [Appellant's] ad-vances by pushing him away. [Appellant] ignored her and forced his legs between her legs. [Appellant] positioned himself on top of her, between her legs, holding her down with his hands and his legs. [BV] attempted to get up, but [Appellant] continued to hold her down with his legs while also pinning her down by her wrists. In a subsequent interview with [civilian police] officers . . . [Appellant] admitted to Detective [W] that he "lost con-trol." . . .

> . . . While [Appellant] was on top of [BV], holding her down with-out her consent, [Appellant] stimulated himself and ejaculated on her stomach and she began to cry. [Appellant] also admitted to Detective [W] that, "I could tell that she was scared and . . . that kind of brought me back down to earth." When describing his actions, [Appellant] stated to Detective [W], "I just finished myself off- it's so humiliating to say- on her."

After Appellant attempted to clean BV's stomach, BV pulled up her pants and asked Appellant to take her back to her car. During the drive, BV asked Appellant if he knew what he had just done, to which Appellant replied that

he would make it up to her. Once she returned to her vehicle, BV texted Appellant: "I think it's best if I call the cops about this while I can tonight." Appellant responded, "I think you have the wrong number." Shortly thereafter, BV called the civilian police.

While the investigation was in progress, Appellant sent an email to Detective W in which he described his actions with BV as "disgusting, despicable and intolerable" and "wrong, very very wrong;" accepted responsibility for his "disgraceful act;" stated that he had "let down his family, the United States Air Force, and the soldiers that would unexpectedly have to fill his [scheduled] deployment;" and declared that he "will forever repent and live in shame."

**B. Procedural History on Remand**

On 26 January 2019, the convening authority signed a document entitled "General Court-Martial Order No. 3." The document noted this court had set aside the findings of guilty and sentence from the first trial. The convening authority continued, "[a] rehearing is hereby ordered before another court-martial to be hereinafter designated." The same day, by a separate memorandum the convening authority informed Appellant he was no longer on appellate leave and was to report to Robins Air Force Base as soon as possible but not later than 11 February 2019.

On 30 January 2019, the 78th Air Base Wing Staff Judge Advocate (78 ABW/SJA) signed a memorandum providing advice to the Commander, 78th Air Base Wing (78 ABW/CC), the special court-martial convening authority. The 78 ABW/SJA summarized the factual and procedural background of the case and recommended the 78 ABW/CC "forward" the Article 133 and Article 134, UCMJ, charges and specifications to the convening authority "with a recommendation that these charges be re-referred to trial by a general court-martial." On 5 February 2019, the 78 ABW/CC signed a memorandum for the convening authority purporting to "forward" the charges and specifications and recommending that they be referred to a general court-martial for a rehearing, as authorized by this court. Among other attachments, the 78 ABW/CC also provided a list of court member nominees with their personal data.

On 8 February 2019, the convening authority's staff judge advocate (SJA) signed a pretrial advice memorandum for the convening authority with regard to Appellant's case. *Inter alia*, the SJA recommended the convening authority "refer the Article 133 and 134 charges and specifications to a trial by general court-martial."

On 14 February 2019, the convening authority convened a general court-martial by Special Order A-9. The same day, the SJA annotated and signed the charge sheet to reflect the convening authority referred the charges and specifications to the general court-martial convened by Special Order A-9, "[f]or a

rehearing on findings and sentence, as ordered by General Court-Martial Order No. 3, this headquarters, dated 26 January 2019." Appellant was arraigned on 12 March 2019; a motions hearing took place on 22 May 2019; and the rehearing concluded on 26 June 2019.

As originally charged, the specification alleging violation of Article 133, UCMJ, stated that Appellant,

> a married man, did at or near Warner Robins, Georgia, on or about 28 December 2014, wrongfully engage in sexual contact with [BV], a woman not his wife, to wit: touching her genitalia and breasts with his hand and ejaculating upon her stomach, which acts, under the circumstances, constituted conduct unbecoming an officer and a gentleman.

As modified by Appellant's exceptions and substitutions, the specification to which Appellant pleaded and of which he was found guilty alleged he

> did, at or near Warner Robins, Georgia, on or about 28 December 2014, grab and hold [BV's] body with his hands and legs without her express consent, which acts, under the circumstances, constituted conduct unbecoming an officer and a gentleman.

## II. DISCUSSION

### A. Military Judge's Acceptance of Appellant's Guilty Plea

Appellant contends his guilty plea was not provident because he "was not advised" of and did not understand the legal effect of his PTA and guilty plea on his ability to raise issues on appeal, and if he had understood these effects he would not have pleaded guilty. Here we consider whether the military judge abused his discretion in accepting Appellant's guilty plea; whether trial defense counsel were ineffective by failing to adequately explain the effect of Appellant's PTA and guilty plea is a distinct issue we consider below.

#### 1. Law

We review a military judge's decision to accept the accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "An abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'" *Id.* (quoting *Inabinette*, 66 M.J. at 322).

It is a "general principle of criminal law that an 'unconditional guilty plea waives all nonjurisdictional defects at earlier stages of the proceedings.'" *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (quoting *United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014)).

"The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). In addition, the military judge must ensure the accused understands and agrees to the terms of any PTA in order "to ensure that [the] accused is making a fully informed decision as to whether or not to plead guilty." *Id.* (citing *United States v. King*, 3 M.J. 458, 458–59 (C.M.A. 1977)) (additional citation omitted).

**2. Analysis**

The relevant questions include whether the military judge adequately established the providence of Appellant's guilty pleas, including the factual basis for the pleas and Appellant's understanding of his PTA, and whether anything *in the record* raised a substantial question in law or fact as to the providence of the pleas. *See Riley*, 72 M.J. at 119 (citation omitted). We find the military judge appropriately ensured Appellant's pleas were provident, and nothing in the record raised a substantial doubt as to their providence.

As to the factual basis for the plea, pursuant to the PTA the parties agreed to a stipulation of fact which the Government introduced as a prosecution exhibit. The stipulation recited the factual circumstances of the offense as described above, and included every factual assertion in the specification to which Appellant pleaded guilty. The military judge read the entire narrative portion of the stipulation aloud to Appellant, and secured Appellant's agreement that it was all true and that Appellant wished to admit it was true. The military judge then secured Appellant's agreement that the six attachments to the stipulation were admissible for all relevant purposes. In addition, after the military judge explained the elements of the offense to Appellant, the military judge had Appellant explain in his own words why he was guilty of the offense; Appellant did so, confirming not only his actions but their "shameful" and "unbecoming" nature that "seriously diminished [his] capacity as an officer." The military judge asked follow-up questions to ensure Appellant agreed the elements of the offense had been established, that Appellant agreed his actions were intentional and unlawful under the circumstances, and that counsel for both parties agreed no further inquiry was required.

As to Appellant's understanding of the PTA, the military judge questioned Appellant to ensure he had not only freely and voluntarily signed the agreement, but had thoroughly read and understood it. The military judge explained the significance of the PTA, and then reviewed the text of the PTA on the record with Appellant to ensure Appellant understood it. This colloquy included the following:

> [Military Judge] MJ: Paragraph 2.g. states that you agree to
> waive all motions which may be waived under the Rules for

Courts-Martial. So Captain Seeto, I did want to talk with you about some of the motions that were actually previously filed in this very case.

So do you understand that a guilty plea ordinarily waives all motions that have been ruled upon adversely to you? Do you understand that?

[Appellant] ACC: Yes, sir.

MJ: So specifically in this case, I ruled on the following [seven] motions: . . . a motion for alleging improper referral and unlawful command influence; . . . a motion to dismiss [the Article 134, UCMJ, specification] for failure to state an offense due to preemption; . . . .

So some of those rulings were adverse to you, Captain Seeto. So do you understand that the appellate court will not be able to review my decisions to see if my rulings were correct?

ACC: Yes, sir.

MJ: So do you understand that you are giving up all potential relief you could have received if the appellate court disagreed with my rulings?

ACC: Yes, sir.

MJ: And Defense Counsel, were there any other motions that you are not making, pursuant to this provision of the [PTA]?

[Civilian Defense Counsel]: No, Your Honor.

MJ: And Captain Seeto, I understand your defense counsel said there weren't any other motions planned anyway but I do want to ask you, do you understand that this term of your [PTA] means that you give up the right to make any motion which by law is given up when you plead guilty?

ACC: Yes, sir.

MJ: And do you also understand that this term of your [PTA] means that you give up the right to make a motion which is given up if not raised during the trial?

ACC: Yes, sir.

MJ: And in particular, do you understand that this term of your [PTA] precludes this court or any appellate court from having the opportunity to determine if you are entitled to any relief based on those motions?

ACC: Yes, sir.

MJ: And when you elected to give up the right to litigate any other motions that might be out there, did your defense counsel explain this term of your [PTA] and the consequences to you?

ACC: Yes, sir.

Appellant further agreed no one had forced him to agree and that he "freely and voluntarily agree[d] to this term . . . in order to receive what he believe[d] to be a beneficial [PTA]," and that he understood and voluntarily agreed to this term and all the PTA terms. Civilian trial defense counsel (CDC) advised the military judge that the motion waiver provision originated with the Defense.

As to Appellant's overall willingness to plead guilty in accordance with the PTA, Appellant averred that he was pleading guilty with full knowledge of the meaning and effect of his plea, that he did so voluntarily, and that he had no questions about the effect of his plea. Appellant further averred, and the CDC agreed, that he had had adequate time to consult with his defense counsel, and that he was satisfied with his defense counsel. Accordingly, the military judge accepted Appellant's guilty plea to the Article 133 charge and specification, as modified by Appellant's exceptions and substitutions.

We further note that, in light of the Government's possession of highly incriminating admissions Appellant made after the offense, as described in the background above, the PTA was very favorable to Appellant in multiple respects. First, it resulted in dismissal of the separate Article 134, UCMJ, charge and specification. Second, it bound the convening authority to approve a sentence of no punishment when a dismissal was a very real possibility, as evidenced by the sentence subsequently imposed by the military judge. Third, it removed the language indicative of sexual misconduct from the specification, permitting Appellant to plead to an offense analogous to an assault consummated by battery, thereby presumably greatly decreasing the likelihood Appellant would be required to register as a sexual offender. These advantages rendered Appellant's willingness to enter the PTA and forego appellate review of various motions all the more plausible.

In summary, the military judge's inquiry regarding the providence of Appellant's guilty plea was commendably thorough. At no point did Appellant express a mistaken belief that any motion he had raised or wanted to raise would be preserved following his guilty plea, that he was otherwise confused or mistaken about the effect of his PTA and guilty plea, or that his plea was less than fully informed, voluntary, and factually accurate. Finding no substantial basis in law or fact to question Appellant's guilty plea appearing in the record of the court-martial proceedings, we find the military judge did not abuse his discretion by finding Appellant guilty in accordance with his plea.

**B. Ineffective Assistance of Counsel**

**1. Additional Background**

At no point prior to or during Appellant's rehearing did the Defense move to dismiss the Article 133, UCMJ, charge and specification for failure to state an offense.[5]

On appeal, Appellant submitted a sworn declaration in support of his claim of ineffective assistance of counsel. Appellant asserts, *inter alia*, that his trial defense counsel failed to advise him that the term in his PTA whereby he agreed to "waive all waivable motions" would cause him to lose the right to appeal all non-jurisdictional issues. To the contrary, Appellant asserts trial defense counsel advised him more than once that he "would not lose [his] right to fully litigate any legal issues on appeal." Appellant asserts he was "never counseled in any substantive way that by accepting the PTA [he] would not be able to raise many substantive issues, especially the issue of failure to state an offense, on appeal." Appellant avers that "[t]hroughout [his] plea [i]nquiry [he] did not believe that [he] could be charged with something that wasn't an offense, offered a deal to plead guilty to it, and would thereby be forced to give up [his] right to appeal whether what [he] was charged with and plead[ed] guilty to was even an offense in the first place." Appellant asserts that if he had been properly advised of the effect of his PTA, he "unequivocally and vehemently" would not have accepted the PTA or pleaded guilty.

This court received sworn declarations from Appellant's three trial defense counsel responsive to Appellant's claims of ineffective assistance. The three declarations are generally consistent. They portray Appellant as very engaged and thoughtful regarding his case, to the point of doing his own legal research. Appellant was frustrated by some of the adverse motion rulings by the military judge, and had mixed feelings regarding the PTA and guilty plea. However, avoiding a punitive discharge and sex offender registration were two of Appellant's priorities. According to Appellant's CDC who served as lead counsel, Appellant was "acutely aware" that the modified Article 133, UCMJ, specification to which he agreed to plead guilty was "potentially legally insufficient;" however, "[a]fter extensive discussions it was decided that any potential legal insufficiency was to his benefit because it made it even less likely that a civilian jurisdiction or licensing board would penalize him for his conviction." Ultimately, according to the CDC, Appellant made a "calculated and strategic" decision to enter the PTA, in accord with the unanimous recommendation of his

---

[5] The Defense did unsuccessfully move, *inter alia*, to dismiss the Article 134, UCMJ, charge and specification of indecent conduct for failure to state an offense, and to dismiss both charges and specifications for double jeopardy.

counsel, "based on his keen knowledge and understanding of the benefits of his plea and despite the limitations of his ability to challenge his conviction on appeal."

### 2. Law

The Sixth Amendment[6] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with a presumption of competent representation. *See Gilley*, 56 M.J. at 124 (citations omitted). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (citation omitted). We review allegations of ineffective assistance de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result? *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[A]n appellant in a guilty plea case establishes prejudice by showing that, but for counsel's deficient performance, there is a 'reasonable probability' that 'he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (quoting *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

### 3. Analysis

Appellant contends his trial defense counsel were ineffective because they failed to advise him his guilty plea would waive appellate review of legal issues, particularly the failure of the specification for which he was convicted to state an offense. He asserts that but for the deficient performance of his trial defense counsel, he would not have pleaded guilty. We are not persuaded.

We acknowledge the factual dispute between Appellant's declaration, which indicates he was misled to believe he would be able to challenge the

---

[6] U.S. CONST. amend. VI.

specification on appeal despite his guilty plea, and the declarations of his trial defense counsel, who indicate Appellant was not misled and his decision was fully informed.[7] We have considered whether a post-trial proceeding is required to resolve this dispute, and we are convinced such a proceeding is not required. *See* 10 U.S.C. § 866(f)(3); *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). In this case, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability" of Appellant's assertion. *See Ginn*, 47 M.J. at 248. Multiple considerations lead us to this conclusion.

First, we find trial defense counsel's mutually supporting declarations to be plausible in light of the entire record before this court. Although, standing alone, this may not be sufficient cause to reject Appellant's allegations, it is a foundation upon which to add the following additional considerations.

Second, as described above, the military judge engaged in a thorough inquiry of the providence of Appellant's guilty plea. Of particular note, the military judge advised Appellant that his PTA and guilty plea would waive his right to appellate review of the rulings on the motions previously filed by the Defense—which the military judge expressly noted included, *inter alia*, a motion to dismiss for failure to state an offense. In addition, the military judge warned Appellant that he would waive any other waivable motion that had not been previously filed by the Defense. On appeal, apart from his assertion that trial defense counsel misled him, Appellant does not explain why he believed his guilty plea would not waive his ability to assert a challenge on appeal to the Article 133, UCMJ, specification after he had an on-the-record discussion with the military judge about how his guilty plea would waive his motion to dismiss the Article 134, UCMJ, specification brought under a similar legal theory.

Third, the PTA was very favorable to Appellant in ways that trial defense counsel credibly assert were particularly important to Appellant. In addition to securing the dismissal of the Article 134, UCMJ, charge and specification, the PTA permitted Appellant to avoid conviction for an explicitly sexual offense, and to avoid a punitive discharge.[8]

---

[7] We considered the declarations to resolve this issue, which we find to be raised by the record. *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020) (holding Courts of Criminal Appeals may consider affidavits when doing so is necessary for resolving issues raised by materials in the record).

[8] We note that although the trial transcript reflects no concern on Appellant's part regarding the waiver of motions, Appellant did pause to consult with his counsel when the military judge advised him, "[T]here is no guarantee or promise being made to you

Fourth, and relatedly, we have considered the strength of the Government's evidence. The fact that Appellant had been convicted of both the conduct unbecoming and the indecent conduct specifications at his original trial is some measure of the likelihood that he would be convicted again in a litigated trial. In particular, the Government possessed Appellant's highly damaging admissions that his treatment of BV had been "disgusting," "despicable," "intolerable," and "disgraceful." The circumstances of the offense made not only a conviction but a sentence including a dismissal a very real possibility, as suggested by the sentence imposed by the original court-martial.

For the foregoing reasons, we find Appellant cannot prevail on his ineffective assistance of counsel claim because he has failed to carry his burden to show his allegations about his trial defense counsel are true, and to show that but for the alleged deficient performance he would not have pleaded guilty.

## C. Failure to State an Offense

### 1. Law

"A specification states an offense if it alleges, either expressly or by implication, every element of the offense, so as to give the accused notice and protection against double jeopardy." *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citation omitted).

Whether a specification fails to state an offense is a question of law that appellate courts ordinarily review de novo. *United States v. Turner*, 79 M.J. 401, 404 (C.A.A.F. 2020) (citing *Crafter*, 64 M.J. at 211). However, an unconditional guilty plea waives all nonjurisdictional defects at earlier stages of the proceedings. *Hardy*, 77 M.J. at 442 (quoting *Lee*, 73 M.J. at 167); *cf*. R.C.M. 910(a)(2) (providing that a conditional guilty plea must specify a pretrial motion for which the adverse determination is subject to further review, and requiring the approval of the military judge and consent of the Government). The failure of a specification to state an offense is a nonjurisdictional, waivable basis for a motion to dismiss. *See* R.C.M. 907(b)(2)(E). Whether an issue has been waived is a question of law that we review de novo. *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019) (citation omitted).

The elements of the offense of conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ, include: "(1) That the accused did or omitted to do a certain act; and (2) That, under the circumstances, the act or omission constituted conduct unbecoming an officer and gentleman." *Manual*

---

that some state won't require you to register as a sex offender." After conferring with trial defense counsel, Appellant responded, "Yes, sir. I understand the Air Force is -- the Air Force cannot make me a sex offender. That is up to the state."

*for Courts-Martial, United States* (2012 ed.), pt. IV, ¶ 59.b. Conduct unbecoming an officer in violation of Article 133, UCMJ, is a general intent offense. *United States v. Voorhees*, 79 M.J. 5, 15–17 (C.A.A.F. 2019).

**2. Analysis**

Appellant contends the Article 133, UCMJ, specification to which he pleaded guilty and of which he was convicted contains "no words of criminality" and therefore fails to state an offense.

We agree with the Government that Appellant waived this issue by his unconditional guilty plea. *See* R.C.M. 907(b)(2)(E); *Hardy*, 77 M.J. at 442 (citation omitted). Appellant argues that failure of a specification to state an offense is in fact a jurisdictional issue, reasoning that a court-martial has no jurisdiction unless the offense(s) in question are subject to court-martial jurisdiction. *See* R.C.M. 201(b)(5). However, Appellant's reasoning is flawed. A defect in the language of the specification does not deprive the court-martial of jurisdiction over the offense itself. In any event, the plain meaning of R.C.M. 907(b)(2)(E), which expressly lists failure to state an offense as "waivable grounds" for a motion to dismiss, is inescapable.

Our finding of waiver does not end our analysis. We recognize our unique statutory responsibility to affirm only such findings of guilty and so much of the sentence as we find are correct and "should be approved." 10 U.S.C. § 866(d)(1). This includes the authority to address errors raised for the first time on appeal despite waiver of those errors at trial. *See Hardy*, 77 M.J. at 442–43. Accordingly, we have considered whether to pierce Appellant's waiver in order to correct a legal error or deficiency. We find no cause to do so.

First, we note that Appellant's own plea of guilty by exceptions and substitutions created the specification of which he now complains. "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *United States v. Broce*, 488 U.S. 563, 570 (1989); *see also Hardy*, 77 M.J. at 442 (quoting *Broce,* 488 U.S. at 570). Appellant affirmed to the military judge that not only had he committed the acts alleged in the specification, but that they constituted a crime of which he believed he was guilty and which he wanted to admit. Appellant's post-trial effort to, in effect, deny his guilt does not, under these circumstances, stir our sense of justice so as to pierce Appellant's waiver.

Second, Appellant's claim is without substantive merit in light of the United States Court of Appeals for the Armed Forces (CAAF) decision in *Voorhees*, 79 M.J. at 15–17. There the CAAF held that Article 133, UCMJ, is a general intent offense; accordingly, Appellant was only required to intend to commit the conduct in the specification—i.e., "grab[bing] and hold[ing] [BV's] body with his hands and legs without her express consent." *See id*. at 16. Contrary

to Appellant's argument, no greater specific intent applied. Moreover, "[c]onscious conduct that is unbecoming an officer 'is in no sense lawful,'" and therefore the specification including the allegation that Appellant's conduct was unbecoming sufficiently distinguished lawful and unlawful behavior. *Id.* at 17 (quoting *United States v. Caldwell*, 75 M.J. 276, 282 (C.A.A.F. 2016)). Appellant's reply brief argues that *Voorhees* was wrongly decided but, as we have said before, "[w]e are not at liberty to contradict our superior court on a point of law," even if we were inclined to do so. *United States v. Knarr*, 80 M.J. 522, 532–33 (C.A.A.F. 2020).

### D. Improper Referral and UCI[9]

#### 1. Additional Background

Before the rehearing, the Defense moved to dismiss the charges and specifications "for improper referral and unlawful command influence." The Defense argued the convening authority's General Court-Martial Order No. 3 dated 26 January 2019 was a referral, which was improper because the convening authority had not obtained the advice of the SJA in accordance with Article 34, UCMJ, 10 U.S.C. § 834, and R.C.M. 406. The Defense further argues that General Court-Martial Order No. 3 unlawfully influenced the subsequent actions by subordinate commanders and SJAs, who otherwise might have been more willing to advise the convening authority of "the legal hurdles created by [this court's] ruling" and recommend an alternative disposition.

The Government responded that this court's authorization of a rehearing did not "reset the entire court-martial process." The Government argued the case was never returned to the 78 ABW/CC for action as the special court-martial convening authority, and therefore no Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing or re-transmittal to the general court-martial convening authority was required. Furthermore, the Government contended General Court-Martial Order No. 3 was not a referral, and the actual referral did not occur until 14 February 2019, after the convening authority received the SJA's pretrial advice to refer the Article 133 and Article 134, UCMJ, charges and specifications to a general court-martial.

The military judge denied the defense motion. He found the convening authority's 26 January 2019 order directing a rehearing "before another court-martial to be hereinafter designated" was distinct from the act of referring the charges and specifications to such a court-martial, which did not occur until the general court-martial was convened on 14 February 2019. The military

---

[9] Appellant's assignment of error styles this issue as "improper preferral/referral and unlawful command influence." However, the pretrial motion upon which the issue is based, and Appellant's explanation of the issue, do not allege improper preferral.

judge further agreed with the Government that the case was never returned to the 78 ABW/CC for disposition, and the evidence suggested that the commander's recommendation on disposition was simply the result of using "standard templates" for sending a list of the potential court members who would be needed for the rehearing court-martial. Accordingly, the military judge concluded that the court-martial was not improperly referred and that the Defense had failed to carry its burden to provide "some evidence" of UCI.

During the military judge's guilty plea inquiry with Appellant, as described above, Appellant told the military judge that he understood that as a result of his PTA and pleas, the military judge's adverse ruling on this pretrial motion would not be subject to appellate review.

**2. Law**

"Allegations of [UCI] are reviewed de novo." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citations omitted). "On appeal, the accused bears the initial burden of raising [UCI]." *Id.*

"Two types of [UCI] can arise in the military justice system: actual [UCI] and the appearance of [UCI]." *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017). Actual UCI "is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case." *Id.* (citations omitted). In order to demonstrate actual UCI, the appellant "must show: (1) facts, which if true, constitute [UCI]; (2) that the proceedings were unfair; and (3) that the [UCI] was the cause of the unfairness." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citation omitted). "[T]he initial burden of showing potential [UCI] is low, but is more than mere allegation or speculation." *Id.* (citation omitted). Once the appellant makes an initial showing of "some evidence," the burden shifts to the Government to "persuad[e] the Court beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute [UCI]; or (3) the [UCI] did not affect the findings or sentence." *Id.* (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

Unlike actual UCI, a meritorious claim of an appearance of UCI does not require prejudice to an accused. *Boyce*, 76 M.J. at 248. "[W]hen an appellant asserts there was an appearance of [UCI,] [t]he appellant initially must show 'some evidence' that [UCI] occurred." *Id.* at 249 (footnote omitted) (citations omitted). "Once an appellant presents 'some evidence,' the burden then shifts to the [G]overnment to . . . prov[e] beyond a reasonable doubt that either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute [UCI]." *Id.* (quoting *Salyer*, 72 M.J. at 423) (additional citation omitted). If the Government fails to rebut the appellant's factual showing, it may still prevail if it proves "beyond a reasonable doubt that the [UCI] did

not place 'an intolerable strain' upon the public's perception of the military justice system and that 'an objective, disinterested observer, fully informed of all the facts and circumstances, would [not] harbor a significant doubt about the fairness of the proceeding.'" *Id.* at 249–50 (alteration in original) (quoting *Salyer*, 72 M.J. at 423).

"Whether an accused has waived an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "Whether a particular right is waivable; whether the [accused] must participate personally in the waiver; whether certain procedures are required for waiver; and whether the [accused]'s choice must be particularly informed or voluntary, all depend on the right at stake." *Ahern*, 76 M.J. at 197 (quoting *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)). UCI in the adjudicative stage of a court-martial generally may not be waived. *See United States v. Baldwin*, 54 M.J. 308, 310 n.2 (C.A.A.F. 2001). However, where the suggestion for a PTA and waiver originates with the accused and his counsel, an accused may affirmatively and knowingly waive an allegation of UCI in the preferral of charges in order to obtain the benefits of a favorable PTA. *United States v. Weasler*, 43 M.J. 15, 19 (C.A.A.F. 1995). In general, "an 'unconditional guilty plea waives all nonjurisdictional defects at earlier stages of the proceedings.'" *Hardy*, 77 M.J. at 442 (quoting *Lee*, 73 M.J. at 167).

**3. Analysis**

On appeal, Appellant reasserts his claims from the defense motion to dismiss that the convening authority improperly referred the charges and specifications to the court-martial, and that UCI infected the referral process. The Government responds that Appellant waived this issue, and that his argument has no merit in any event. We agree with the Government.

The record before us indicates Appellant knowingly and intelligently waived appellate review of the issue raised in his pretrial motion. UCI, of course, "is the mortal enemy of military justice," *United States v. Boyce*, 76 M.J. 242, 246 (C.A.A.F. 2017) (citation omitted), and "it is against public policy to require an accused to withdraw an issue of [UCI] in order to obtain a pretrial agreement." *United States v. Kitts*, 23 M.J. 105, 108 (C.M.A. 1986) (citation omitted). However, the CAAF has held that an accused may knowingly and intelligently waive a known UCI issue in the preferral of charges in order to secure a favorable PTA initiated by the defense. *Weasler*, 43 M.J. at 19. The CAAF has also implied that a known UCI issue in the referral of charges may similarly be knowingly and intelligently waived. *See, e.g., Baldwin*, 54 M.J. at 310 n.2 (citations omitted) (citing *Weasler* for the principle that a "pretrial

agreement initiated by accused waived any objection to unlawful command influence in the preferral and referral of charges"); *Weasler*, 43 M.J. at 17–18 (explaining that referral, like preferral, is part of the accusatorial process and distinct from the adjudicative process).

In this case, the motion waiver provision originated with the Defense. Appellant and his counsel were obviously aware of this alleged UCI issue as the Defense raised it in its pretrial motion. During the guilty plea inquiry, the military judge explained to Appellant that his PTA and guilty plea would waive appellate review of the military judge's adverse ruling on this motion. Appellant affirmed that he understood, but he nevertheless desired to proceed with the PTA. As described above, the PTA was favorable to Appellant in multiple respects. In light of *Weasler* and general principles of waiver as explained by our superior court, we find no reason to conclude Appellant could not or did not effectively waive appellate review of the alleged UCI issue in the referral of charges.

Again, finding waiver does not end our inquiry. Assuming *arguendo* that Appellant did not effectively waive this issue, and also because we recognize our authority to pierce Appellant's waiver in order to correct a legal error, *see Hardy*, 77 M.J. 442–43, we have considered the substance of the defense motion to dismiss and find it to be without merit.

As to defective referral, we agree with the military judge that the referral did not occur with the issuance of General Court-Martial Order No. 3 on 26 January 2019, but on 14 February 2019 when the charges were actually referred to the general court-martial created by Special Order A-9. The court-martial to which the charges were referred was not created until 14 February 2019. Thus referral was after the convening authority received the SJA's pretrial advice.

As to UCI, the military judge correctly concluded the charges and specifications had never been returned to the 78 ABW/CC for action, forwarding, or a recommendation. The record was returned to the convening authority for action pursuant to this court's decision authorizing a rehearing. The convening authority promptly decided a rehearing was appropriate and, eventually, referred the charges to the general court-martial. The 78 ABW/CC transmitted the names and data of potential rehearing court members to the convening authority. However, neither the 78 ABW/CC nor any other subordinate commander had any formal authority or role in the disposition of the case on remand, in the performance of which they could be unlawfully influenced. The convening authority appropriately exercised the authority that rested with him. Accordingly, we find Appellant has failed to carry his initial burden to demonstrate "some evidence" of UCI.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866. Accordingly, the findings and sentence are **AFFIRMED**.[10]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[10] We note an error in the promulgating order with respect to the finding as to the Specification of Charge III, the Article 133, UCMJ, offense. The order accurately records Appellant's plea of guilty by exceptions and substitutions. However, the order fails to record that the Government withdrew the excepted language and that the military judge found Appellant guilty of the Specification as modified by the substituted language. We direct the publication of a corrected order to remedy the error.