UNITED STATES, Appellee

v.

**Charles D. WEASLER, Specialist U.S. Army, Appellant.**

No. 94–1249.
CMR No. 9300551.

U.S. Court of Appeals for
the Armed Forces.

Argued May 16, 1995.

Decided Sept. 26, 1995.

For Appellant: *Captain James W. Friend* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Captain Teresa L. Norris* (on brief).

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel John M. Smith* and *Captain Michael E. Mulligan* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

█ 1. Pursuant to his pleas, appellant was convicted of making and uttering a total of 28 bad checks (alleged in 6 specifications) of a total value of $8,920, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced by officer members to a bad-conduct discharge, 9 months' confinement, and reduction to the lowest enlisted grade. Acting pursuant to a pretrial agreement, the convening authority approved the sentence but suspended confinement in excess of 3 months for a period of 12 months. The Court of Military Review[1] affirmed the findings and sentence. We granted review of the following issues:

I

WHETHER THE FINDINGS AND SENTENCE MUST BE SET ASIDE AND THE CHARGE AND ITS SPECIFICATIONS DISMISSED IN ORDER TO NEGATE THE EFFECTS OF UNLAWFUL COMMAND INFLUENCE IN THE PREFERRAL AND REFERRAL OF THE CHARGES.

1. *See* 41 MJ 213, 229 n. * (1994).

## II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN FAILING TO DETERMINE FACTUALLY AND LEGALLY WHETHER UNLAWFUL COMMAND INFLUENCE EXISTED AND ERRED IN FAILING TO RULE ON THE MOTION TO DISMISS BEFORE THE COURT.

## III

WHETHER THE PRETRIAL AGREEMENT PURPORTING TO WAIVE APPELLANT'S OBJECTION TO UNLAWFUL COMMAND INFLUENCE VIOLATES PUBLIC POLICY.

We hold that the pretrial agreement initiated by appellant waived any objection to improper interference with the preferral and referral of charges.

### FACTS

2. Prior to preferral of charges appellant's company commander, Captain (CPT) Michele Morris, was scheduled to go on leave. In late October she discussed appellant's case with the battalion commander and decided to recommend a general court-martial. Before departing on leave she met with 1st Lieutenant (1LT) John Hottman, who was to be the acting commander. She told him that if charges came to the office, all he would have to do is "sign" them. CPT Morris testified that if 1LT Hottman had recommended anything other than a general court-martial, she would have repreferred the charges. Appellant's last request for an administrative discharge in lieu of court-martial was disapproved by CPT Morris, as well as the battalion commander, the brigade commander, and the general court-martial convening authority. In the transmittal form attached to the charges, the battalion commander and the brigade commander recommended a general court-martial.

3. During *voir dire* of the members, appellant filed a motion to dismiss the charges alleging unlawful command influence in the preferral process. Following testimony on appellant's motion at an Article 39(a), UCMJ,

10 USC § 839(a), session, the judge stated that if 1LT Hottman did not exercise his own discretion, there may have been an improper preferral of the charges. The judge then granted a continuance for the Government to attempt to secure the testimony of 1LT Hottman.

4. During the continuance, defense counsel proposed to waive the motion to dismiss, Appellate Exhibit (App.Ex.) IX, in exchange for a favorable sentence limitation. Thereafter, the defense's waiver in writing of the motion to dismiss was accepted. "I understand that if my motion is successful and the military judge were to dismiss the charge without prejudice to the Government that the Government could re-prefer the charge." App. Ex. XII. Later in that waiver document appellant also agreed to "waiv[e] further investigation into my allegations of unlawful command influence."

5. The defense acknowledged at trial that normally an accused cannot waive a command-influence motion as part of a pretrial agreement. But the defense argued that the non-waiver rule does not apply when the waiver "originates" with the defense. Further, counsel stated that the agreement was not prohibited by RCM 705(c)(1)(B), Manual for Courts–Martial, United States, 1984. In response to the judge's inquiry the defense also asserted that there was no jurisdictional impediment to the agreement. The defense cited *United States v. Cruz*, 25 MJ 326 (CMA 1987), and *United States v. Corriere*, 24 MJ 701 (ACMR 1987), as permitting waiver of a command-influence issue.

### DISCUSSION

6. "Command influence is the mortal enemy of military justice." *United States v. Thomas*, 22 MJ 388, 393 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). It strikes at the very heart of the system. Unlawful command influence undermines the integrity of the military justice system as well as of the commanders who are responsible for discipline within their units.

7. Unlawful command influence has been a concern since World War I. Johnson, *Unlawful Command Influence: A Question of Balance,* The Judge Advocate General (Navy) Journal 87, 88 (March–April 1965). Because of the number of post-World War II complaints concerning the issue, Congress responded with Articles 37 and 98, UCMJ, 10 USC § 837 and 898, respectively, which make command influence punishable under the Code. Article 37(a) provides:

No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceedings. No person subjected to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. The foregoing provisions of the subsection shall not apply with respect to (1) general instructional or informational courses in military justice if such courses are designed solely for the purpose of instructing members of a command in the substantive and procedural aspects of courts-martial, or (2) to statements and instructions given in open court by the military judge, president of a special court-martial, or counsel.

8. The Manual for Courts–Martial also prohibits command influence. RCM 306(a). The diligence of this Court in preventing unlawful command influence was emphasized by the Supreme Court in *Weiss v. United States,* —— U.S. ——, ——, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994). The Chief Justice observed:

The entire system ... is overseen by the Court of Military Appeals, which is composed entirely of civilian judges who serve for fixed terms of 15 years. That Court has demonstrated its vigilance in checking any attempts to exert improper influence over military judges....

9. Recently we stated in *United States v. Hamilton,* 41 MJ 32, 36 (CMA 1994), that "[t]he term 'unlawful command influence' has been used broadly in our jurisprudence to cover a multitude of situations in which superiors have unlawfully controlled the actions of subordinates in the exercise of their duties under the UCMJ." But this Court has sought to draw a distinction between the accusatorial process and the adjudicative stage, that is, the difference between preferral,[2] forwarding,[3] referral,[4] and the adjudica-

---

**2.** *United States v. Hamilton,* 41 MJ 32 (CMA 1994) (four judges agreed that defects in preferral of charges are waived if not raised at trial). *Cf. United States v. Thomas,* 22 MJ 388, 394 (CMA 1986) (the Court held that the actions of the division commander did not constitute command influence because they "would not have adversely affected an accused. Conceivably, those remarks might even have benefited an accused...."), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). *See also United States v. Kelly,* 40 MJ 558, 569–70 (NMCMR 1994).

**3.** *United States v. Hamilton,* 41 MJ at 37 (three judges agreed "defects in ... forwarding of charges" are waived if not raised at trial); *United States v. Shiner,* 40 MJ 155, 157 (CMA 1994) ("Assuming, *arguendo,* that the [Navy] captain [special court-martial convening authority (CA)] became an accuser, we hold that the failure of the captain to forward the charges to the next higher level of command was a nonjurisdictional error, which was waived by appellant's failure to raise it at his court-martial."); *United States v. Nix,* 40 MJ 6 (CMA 1994) (the Court presumed error and set aside the conviction when the CA forwarding the charges had a personal grudge that was not negated in the record).

**4.** *United States v. Davis,* 37 MJ 152, 155–56 (CMA 1993) (allegation of command influence by brigade commander on major to dispose of offenses by general court-martial instead of Article 15, Uniform Code of Military Justice, 10 USC § 815, or special court-martial unsubstantiated by military judge's specific findings of fact that major "independently" arrived at his referral recommendation and was not unlawfully influenced by superior authority in arriving at his decision); *United States v. Jeter,* 35 MJ 442, 446–47 (CMA 1992) (accused sought favorable treatment from convening authority through "blackmail" scheme and then alleged that referral was improper because CA was actually an accuser as a result of "personal interest" in case and had influenced acting commander in referral of case;

tive process, including interference with witnesses,[5] judges,[6] members,[7] and counsel.[8]

10. This case does not involve the adjudicative process. Here the issue is whether coercion influenced the preferral of charges. In the past we have "treated" such charges "as unsigned and unsworn." *United States v. Hamilton*, 41 MJ at 36. It was the impact on the adjudicative stage that was one of the factors employed in *United States v. Mezzanatto*, ‒‒ U.S. ‒‒, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), in rejecting the Court of Appeals for the Ninth Circuit's holding that one cannot waive Fed.R.Evid. 410.[9]

11. As Justice Thomas stated in *Mezzanatto*:

[T]here may be some evidentiary provisions that are so fundamental to the reliability of the fact-finding process that they may never be waived without irreparably "discredit[ing] the federal courts." ... *United States v. Josefik*, 753 F.2d 585, 588 (C.A.7 1985) ("No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept"). But enforcement of agreements like respondent's plainly will not have that effect. The admission of

plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts.

‒‒ U.S. at ‒‒, 115 S.Ct. at 803 (emphasis added).

12. The Court also rejected Mezzanatto's argument that to allow these waivers would permit prosecutorial overreaching. Justice Thomas stated:

The dilemma flagged by respondent is indistinguishable from any of a number of difficult choices that criminal defendants face every day. The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government "may encourage a guilty plea by offering substantial benefits in return for the plea." "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"

*Id.* at ‒‒ ‒ ‒‒, 115 S.Ct. at 805–06 (citation omitted).

13. The Court indicated the "mere potential for abuse of prosecutorial bargaining

---

accused also alleged that CA influenced superior commander when superior commander reviewed findings and sentence; allegations not supported by findings and conclusions of hearing held under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411, (1967); in any event, was waiver of issue by accused because seen as an Article 22(b), UCMJ, 10 USC § 822(b), allegation). *Cf. United States v. Corcoran*, 40 MJ 478, 484 (CMA 1994) (unanimous opinion) ("[n]onjurisdictional defects in the preferral, forwarding, and referral process are waived if not raised prior to entry of pleas").

**5.** *United States v. Dykes*, 38 MJ 270 (CMA 1993) (post-trial claims of command influence by squadron commander when he purportedly "improperly influenced" potential defense witnesses and purportedly influenced defense counsel into a *sub rosa* agreement with trial counsel; affidavits submitted on influence issue deemed inconclusive).

**6.** *United States v. Mabe*, 33 MJ 200, 206 (CMA 1991) (allegation of unlawful command influence when Chief Judge of the Navy–Marine Corps Trial Judiciary sent letter to military judge about light sentencing; command influence found but held not to be prejudicial because of "prompt action to curtail" impact by the Judge Advocate General of the Navy, "full disclosure," and "opportunity for *voir dire* and challenge" of judge).

**7.** *United States v. Hilow*, 32 MJ 439 (CMA 1991); *United States v. McClain*, 22 MJ 124 (CMA 1986); *United States v. Accordino*, 20 MJ 102 (CMA 1985); *United States v. Brice*, 19 MJ 170 (CMA 1985). *Cf. United States v. Reynolds*, 40 MJ 198, 202 (CMA 1994) (three judges found no prejudice as a result of the court members' meeting with commander prior to trial).

**8.** *United States v. Dykes, supra.*

**9.** Mil.R.Evid. 410, Manual for Courts–Martial, United States, 1984, is substantially the same as this Federal Rule of Evidence.

power is an insufficient basis for foreclosing negotiation altogether." To overcome the question of abuse, it would be appropriate to make an inquiry as to whether the waiver agreement was "the product of fraud or coercion." The Court held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." —— U.S. at ——, 115 S.Ct. at 806.

14. As to the accusatory stages, we have held that an accuser may not refer a case to trial and that a commander may not be coerced into preferring charges. *United States v. Jeter*, 35 MJ 442 (CMA 1992). Where there is coercion in the preferral process, "the charges are treated as unsigned and unsworn," but the "failure to object" constitutes waiver of the issue. Furthermore, an individual should not interfere with the personal recommendation as to referral. However, we have consistently held that any defects in the forwarding process are waived if not challenged at trial. *United States v. Hamilton*, 41 MJ at 36; *but see* 41 MJ at 39, 40 (separate opinions of Sullivan, C.J. and Wiss, J.). We reject the argument that there cannot be a waiver under the facts in this particular case. As the Court declared in *United States v. Kitts*, 23 MJ 105, 108 (CMA 1986), "[I]t is against public policy to require an accused to withdraw an issue of unlawful command influence in order to obtain a pretrial agreement." However, this is not an instance of requiring the accused to withdraw an issue. On the contrary, the suggestion for the pretrial agreement and waiver in this case originated with appellant and his counsel. If an accused waives an allegation of unlawful command influence in the preferral of charges by failure to raise a timely objection at trial, then surely an accused, following a timely objection, should be permitted to initiate an affirmative and knowing waiver of an allegation of unlawful command influence in the preferral of charges in order to secure the benefits of a favorable pretrial agreement. To hold otherwise would deprive appellant of the benefit of his bargain.

15. Additionally, the actions of CPT Morris are not so pernicious that they taint every stage of the proceeding, and our holding does not undermine public confidence in these proceedings or in military criminal law generally. As the military judge noted, he would have allowed the Government to withdraw the charges and prefer new untainted charges. This in effect would have denied appellant a very favorable pretrial agreement.

16. We are satisfied beyond a reasonable doubt that there was no unlawful command influence that affected either the findings or sentence in this case. *United States v. Stombaugh*, 40 MJ 208 (CMA 1994); *see also United States v. Dykes*, 38 MJ 270 (CMA 1993); *United States v. Allen*, 33 MJ 209, 212 (CMA 1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *United States v. Mabe*, 33 MJ 200, 203 (CMA 1991); *United States v. Levite*, 25 MJ 334, 338 (CMA 1987); *United States v. Thomas*, 22 MJ 388 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

17. Our holding in this case does not foreclose the Court from stepping in when there are actions by commanders that undermine public confidence in our system of justice or affect the rights of an accused. We will be ever vigilant to ensure that unlawful command influence does not play a part in our military justice system.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and GIERKE concur.

SULLIVAN, Chief Judge (concurring in the result):

18. I would affirm this case on the basis of harmless error. *United States v. Thomas*, 22 MJ 388, 396 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). The command influence in this case (Captain Morris' order to Lieutenant Hottman, soon to be the acting commander during her leave, to "sign" the charges—App. Ex. IX (motion to dismiss)—is clearly the imposition of the influence of a senior over a junior in the preferral-of-charges stage under

the Uniform Code of Military Justice)[1] was not prejudicial in light of the entire record here. *See United States v. Johnston,* 39 MJ 242 (CMA 1994). The majority in its opinion, however, goes further and would legalize waiver of command-influence issues. In my view, the majority makes a grave mistake in applying waiver to the important area of command influence. Art. 37(a), UCMJ, 10 USC § 837(a). *See Weiss v. United States,* 510 U.S. 163, ——, 114 S.Ct. 752, 762, 127 L.Ed.2d 1 (1994).

19. Let there be no misunderstanding about the majority opinion in this case. It is a landmark decision in this Court's 44–year history which, for the first time, permits affirmative waiver of a *prima facie* case of unlawful command influence. It attempts to justify such a holding by relying on this Court's decision in *United States v. Hamilton,* 41 MJ 32 (1994). *That case,* however, was not decided on the basis of waiver, and I disagree with the majority's attempt to bootstrap today's decision on ambiguous dicta in that opinion.[2] *See generally United States v. Johnston, supra.* ¶ 18. Moreover, Article 37 of the Code does not provide for waiver or for private deals between an accused and a

1. A few words on the command influence in this case may be necessary. The majority opinion examines Captain Morris' intervention with LT Hottman, the about-to-be acting commander, as a command-influence issue but then fails to confront it except by waiver. The military judge also treated the intervention as apparent command influence which may have resulted in an improper preferral. RCM 306, Manual for Courts-Martial, United States, 1984, states that "[e]ach commander has discretion to dispose of offenses by members of that command." The Discussion following the rule indicates that each commander must have "independent" discretion to "dispose" of the charges. Here Captain Morris interferred with that discretion by ordering LT Hottman to "sign" the charges. When the military judge discovered this fact at a hearing on a pretrial motion to dismiss, a continuance was granted whereupon appellant was able to negotiate a very favorable sentence limitation.

In my view when a commander is given discretion, that discretion should be sacrosanct from interference especially in the military justice field. *See* RCM 307(a), Discussion: "A person authorized to dispose of offenses should not be ordered to prefer charges when this would disqualify that person from exercising that person's authority or would improperly restrict that person's discretion to act on the case. *See* RCM 104 [Art. 37, Uniform Code of Military Justice, 10 USC § 837] and 504(c)." (Citations omitted.)

Under the UCMJ, when Congress or the President confers a power on a servicemember to perform a judicial or quasi-judicial duty, that duty must be performed without interference from a superior. That duty can be the power of a commander to make a decision on preferring charges or the power of a panel member to vote on the guilt of a fellow servicemember or the power of a military judge to try a case. All must be free from interference from above. All must be free from the influence of command. That is a bedrock assumption of the military system of justice. That is the law. Art. 37; *see also United States v. Hagen,* 25 MJ 78, 86 (CMA 1987) (Sullivan, J., concurring), *cert. denied,* 484 U.S. 1060,

108 S.Ct. 1015, 98 L.Ed.2d 981 (1988); Standard 3–3.9, ABA Standards for Criminal Justice: The Prosecution Function (3d ed. 1992) states: "A prosecutor should not be compelled by his or her supervisor to prosecute a case in which he or she has a reasonable doubt about the guilt of the accused."

While there was clear command influence in the instant case, the record also indicates that, since this was discovered prior to trial, the Government could have easily withdrawn the charges and done a proper preferral of charges without any prejudice to appellant. Hence, I can affirm this case on harmless error.

2. The majority opinion in *United States v. Hamilton,* 41 MJ 32, 37 (CMA 1994), held that an Article 37 violation was neither asserted nor established in that case. The Court stated:

Based on the evidence before us, we conclude—as did the Court of Military Review—that appellant has not made out his case for command influence. Accordingly, we hold that the Court of Military Review did not err in concluding that COL Solomon's decision to prefer charges and his recommended disposition of those charges was untainted by unlawful command influence.

The *Hamilton* majority in dicta further stated:

Unlawful command influence at the referral, trial, or review stage is not waived by failure to raise the issue at trial. *See generally United States v. Blaylock,* 15 MJ 190, 193 (CMA 1983). If a party is deterred by unlawful command influence from challenging at trial any defects in the preferral or forwarding of charges, then the provisions of Article 37 are triggered and the issues are not waived, because the trial itself has been subjected to unlawful command influence. Appellant does not assert a violation of Article 37 in the case before us.

Absent opposition from the majority, I expressed my view that its opinion should not be construed to permit waiver of command-influence issues. *See United States v. Hamilton,* 41 MJ at 39 (Sullivan, C.J.) (concurring in part and in the result).

command to cover-up instances of unlawful command influence which have been discovered at trial. *See United States v. Mezzanatto,* —— U.S. ——, ——, 115 S.Ct. 797, 803, 130 L.Ed.2d 697 (1995) ("[T]here may be some evidentiary provisions that are so fundamental to the reliability of the fact-finding process that they may never be waived without irreparably discredit[ing] the federal courts.").

20. The majority today offers what at best can be described as a "blackmail type" option to those who would engage in unlawful command influence. Any accused who finds out about command influence can blackmail the guilty commander into giving him a lenient deal. In effect, this approach holds that the integrity of the military justice system, a major component in morale and discipline of our armed forces, may be subverted by the private interests of an accused and a convening authority. I strongly disagree. *See United States v. Kitts,* 23 MJ 105, 108 (CMA 1986).

21. The majority opinion mouths the traditional denunciations of unlawful command influence but then avoids resolving the command-influence issue so as to not "deprive appellant of the benefit of his bargain." ¶ 14. In view of this Court's experience with unlawful command influence for over 44 years, the "contract" rationale proffered by the majority is dead wrong. The majority's condonation of bartered justice is not only self-defeating in an institutional sense but reneges on our traditional commitment to vigilance on this issue. *See Weiss v. United States,* 510 U.S. at ——, 114 S.Ct. at 762.

22. What happened to the straightforward approach of uncovering the facts of any command influence and dealing with it using the provisions of law that Congress gave us under the UCMJ? This approach ensures the reliability of courts-martial in the eyes of the American people and its military forces. *See generally United States v. Mezzanatto, supra* at 803. To discard this approach in a case which may simply be resolved on the

basis of harmless error, as suggested by Judge Wiss, raises serious concerns as to the *Weasler* majority's agenda. Undercutting the UCMJ's provisions against command influence brings us back to the old days of American military justice where the commander could do no wrong and the servicemember had few rights.

WISS, Judge (concurring in the result):

23. I cannot agree with the majority opinion, as yet another verse of an old song, concluding that an issue of command influence can be waived. Elsewhere, I have expressed some thoughts on this issue that I will reaffirm but not reiterate here. *See United States v. Hamilton,* 41 MJ 32, 40–41 (CMA 1994) (Wiss, J., concurring in the result).

24. So there can be no misunderstanding and so that I do not have to address every aspect of the majority's convoluted approach to when command influence is command influence—and if it is command influence, when it is bad versus when it is tolerable— let me say quite bluntly: The *greatest* risk presented by unlawful command influence has nothing to do with the stage at which it is wielded; it has nothing to do with whether an accused is bludgeoned with it or whether, in an exercise of ironic creativity, an accused is able to turn the tables and actually use it to his advantage.* Instead, it is in its insidiously pernicious character.

25. Unlawful command influence has been called a cancer of the military justice system; ruefully, opinions like the majority's in this case permit a fertile field for that cancer by fostering a legal atmosphere where ignorance of its existence is made more likely. After today, anytime that a particular accused stumbles across an exercise of command influence and confronts the wrongdoer with it, all that the commander has to do is buy off that accused's silence and go on his merry way, infecting other cases in which

---

* Those factors do affect what appellate repercussions flow from the unlawful command action, *see, e.g., United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see also United States v. Stombaugh,* 40 MJ 208, 214–15 (CMA 1994) (Wiss, J., concurring in part and in the result).

accused persons are ignorant of the lurking evil.

26. The majority assuages its collective conscience by making the assurance that it "will be ever vigilant to ensure unlawful command influence does not play a part in our military justice system." ¶17. It makes that claim, however, at the end of an opinion that ignores the evil presence. Like cancer in a human body, this cancer in our system of justice will not go away by shutting our eyes to it.

27. I believe that this Court will witness the day when it regrets the message that this majority opinion implicitly sends to commanders. However, because this accused learned of the influence and actually used it to extract a pretrial agreement with which he was fully satisfied, I find no prejudice *in this case* and so will join in affirming the decision below.