*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Joseph D. SUAREZ, Corporal**
United States Marine Corps, Appellant

**No. 25-0004**
Crim. App. No. 202300049

Argued April 8, 2025—Decided August 5, 2025

Military Judges: Melanie Mann (arraignment),
Cory Picton (motions), Stephen Keane (motions),
and Andrea Goode (trial)

For Appellant: *Lieutenant Colonel Todd Eslinger*, USMC (argued); *Major Colin W. Hotard*, USMC (on brief); *Lieutenant Commander Alaric A. Piette*, JAGC, USN.

For Appellee: *Lieutenant Colonel Candace G. White,* USMC (argued); *Colonel Iain D. Pedden*, USMC, *Lieutenant Commander James P. Wu Zhu*, JAGC, USN*,* and *Brian K. Keller*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

———————

Judge JOHNSON delivered the opinion of the Court.

Appellant was convicted, pursuant to his pleas, of one specification each of wrongful use, introduction on base, and distribution of cocaine, and two specifications of distribution of a Schedule I controlled substance, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2018), as well as one specification of conspiracy to distribute cocaine, in violation of Article 81, UCMJ, 10 U.S.C. § 881 (2018). Consistent with the plea agreement, one specification of attempted prostitution in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2018), and one specification of solicitation to distribute cocaine in violation of Article 82, UCMJ, 10 U.S.C. § 882 (2018), were withdrawn and dismissed. The military judge sentenced Appellant to a dishonorable discharge, total confinement for sixty months, and reduction to E-1.

This appeal concerns the effect of Appellant's guilty plea on his previously litigated unlawful command influence (UCI) claim. Appellant argues that the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) erred in concluding his guilty plea waived adjudicative UCI. He also contends the NMCCA erred in concluding he was not prejudiced by the deficient performance of trial defense counsel, who advised Appellant that his guilty plea would not waive UCI and would avoid the risk of registered sex offender status for the attempted prostitution offense.

We granted review of two issues raised by Appellant and specified a third issue:

> I. Did unlawful command influence affect Appellant's court-martial?
>
> II. Was trial defense counsel's deficient performance prejudicial?
>
> III. Did Appellant waive review of the question whether unlawful influence affected his court-martial?

*United States v. Suarez*, 85 M.J. 239 (C.A.A.F. 2024) (order granting review).

Addressing the specified issue first, we hold Appellant waived review of the question whether unlawful influence affected his court-martial by entering a plea agreement with a "waive all waivable motions" provision and affirming during his providence inquiry that he understood the meaning and effect of this provision. As a result, we decline to answer Issue I, which has been rendered moot by our resolution of the specified issue. Turning to Issue II, we are unconvinced the NMCCA applied the correct legal principles in determining Appellant was not prejudiced by trial defense counsel's deficient performance. Accordingly, we set aside the lower court's decision and remand the case for further proceedings consistent with this opinion.

## I. Background

Appellant was apprehended on January 11, 2022, after he tested positive for cocaine use in a random command urinalysis. Battalion Commanding Officer (CO) Lieutenant Colonel (LtCol) W and Sergeant Major (SgtMaj) C had coordinated with Naval Criminal Investigative Service (NCIS) Special Agent (SA) W to execute the apprehension during a scheduled command climate survey debrief. Appellant arrived late for the event and was led into a classroom where LtCol W was briefing the company. Upon being notified of Appellant's arrival, SgtMaj C called out to Appellant to identify himself. LtCol W pointed out Appellant's location to SA W, who apprehended Appellant and placed him in handcuffs. As Appellant was being escorted from the classroom, LtCol W referred to him as a "drug kingpin" and told the assembled company, "That's the guy selling cocaine in my barracks." SgtMaj C added, "This piece of crap drug kingpin has been selling drugs in your barracks and no one has the nut sack to say anything about it."

On January 19, 2022, an Inspector General (IG) investigation was opened in response to an anonymous complaint against LtCol W and SgtMaj C which cited, among other things, the circumstances of Appellant's apprehension. In response to the IG complaint, the regimental CO immediately replaced LtCol W as the convening authority

for Appellant's case. Shortly thereafter, an investigating officer (IO) was appointed to investigate the complaint.

The IO interviewed fifty-five Marines, including LtCol W and SgtMaj C. He found that LtCol W coordinated Appellant's apprehension with NCIS; LtCol W and SgtMaj C made the reported comments about Appellant to the company; and both "exercised poor judgment" in effectuating the apprehension in such a public forum and commenting on Appellant's conduct. The IO found sufficient evidence to substantiate other unrelated allegations that SgtMaj C "exercised poor judgment in using tailored language based on [First Sergeant (1stSgt) M's] ethnic background," LtCol W was derelict in his duties by consuming alcohol and providing alcohol to personnel during training exercises, and the command improperly withheld liberty privileges from Lance Corporal (LCpl) L. Accordingly, in a report issued on March 8, 2022, the IO recommended:

> Based upon LtCol [W's] poor judgment in conducting [Appellant's apprehension], poor judgment in comments during and immediately after the [apprehension], improper restriction of LCpl [L's] normal liberty . . . , and dereliction of duty in violation of Article 92, UCMJ, I recommend the Commanding General, 3d Marine Division, take appropriate administrative action against LtCol [W].
>
> . . . Based on SgtMaj [C's] poor judgment in making unprofessional comments following [Appellant's apprehension] and towards 1stSgt [M], I recommend the Commanding General informally counsel SgtMaj [C].

On March 31, 2022, the commanding general relieved LtCol W of his command. Additionally, although the IO had recommended that SgtMaj C receive only informal counselling, the commanding general also relieved SgtMaj C of his leadership position.

On April 24, 2022, the charges against Appellant were referred to a general court-martial.[1]

## *The Motion to Dismiss*

On May 31, 2022, Appellant filed a motion to dismiss all charges and specifications with prejudice due to actual and apparent UCI. Appellant argued that LtCol W's comments to the company "branded [Appellant] as a 'drug kingpin' among all members in the unit," inhibiting anyone who otherwise would have come forward in support of Appellant during the investigation or court-martial. Additionally, he argued that SgtMaj C's comments "inappropriately and negatively influenced the perception of members of the command—prejudice that cannot be undone."

Appellant disputed the notion that the removal of LtCol W and SgtMaj C from their leadership positions cured the taint from UCI, noting that these measures "did not affect the lower enlisted and the battalion":

> [T]he last that they have heard . . . about [Appellant] was from a member of their leadership, that he was a drug kingpin, and he did these things— they have heard no evidence to the contrary. They have heard no attempts to cure—attempts by the new CO to say that they were free from retaliation if they spoke on behalf of [Appellant].

According to Appellant, the comments by LtCol W and SgtMaj C and the circumstances of Appellant's public apprehension precluded a fair trial, as evidenced by widespread media coverage of his apprehension and the fact that witnesses and brig staff echoed the "drug kingpin" moniker.[2]

---

[1] Charges were preferred on February 3, 2022, after the regimental CO stepped in as the convening authority. Additional charges were preferred on April 6 and 18, 2022, after LtCol W and SgtMaj C were relieved of their leadership positions.

[2] The defense argued that the same facts constituted unlawful pretrial punishment—an argument the CCA rejected and which Appellant did not raise on appeal to this Court.

The military judge denied the motion. In a July 25, 2022, email supplementing his ruling, the military judge found that Appellant presented "some evidence" of UCI:

> The manner in which [Appellant] was brought forth, [apprehended], and subsequently disparaged, could have created an impression amongst the unit, and perhaps others outside the unit due to publicity of the [apprehension], that the Battalion CO and SgtMaj [C] had prejudged [Appellant] as guilty instead of maintaining their required impartiality and [Appellant's] presumption of innocence.

> The effect of the public [apprehension] and disparaging commentary was that potential witnesses and potential members received a message that [Appellant] was guilty and should be removed from the Unit/Marine Corps. Such actions have a chilling effect on potential witnesses, potential members and creates [sic] the perception of unfairness and illegitimacy of the proceedings.

However, the military judge concluded the Government had proven beyond a reasonable doubt:

> a) that the facts did not amount to actual [UCI] . . . ; and

> b) . . . that the [apparent] UCI did not place an intolerable strain on the public's perception of military justice such that an objective disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.

The military judge cited the command-initiated remedial measures to support his conclusion that actual UCI would not affect the proceedings. First, the regimental CO removed LtCol W as the convening authority for Appellant's case before charges were preferred. Then, the commanding general removed both LtCol W and SgtMaj C from their leadership positions before charges were referred.

To ensure there was no apparent UCI, the military judge ordered two additional remedial measures:

>   (1) the [convening authority] will issue a directive
>   to encourage any member of the command to serve
>   as a witness in support of [Appellant] without any
>   repercussions; and
>
>   (2) the defense will be authorized liberal voir dire
>   of the members concerning whether they know
>   about the 11 January 2022 incident involving the
>   accused at the command climate brief, or anything
>   about views of [Appellant] by members of the com-
>   mand in 3d Battalion, 3d Marine Littoral Regi-
>   ment (including LtCol [W] and SgtMaj [C]).

A second military judge who was detailed to replace the first ordered a third remedy: "[T]o ensure that unlawful command influence won't affect the proceedings beyond reasonable doubt. . . . I'm going to order that no members come from 3d Battalion, 3d Marines."

### *The Guilty Plea*

The military judges' remedial measures were never implemented. On August 9, 2022, Appellant entered into an agreement to waive all waivable motions and plead guilty (with exceptions) to the Article 112a, UCMJ, offenses as well as the Article 81, UCMJ, offense. In exchange, the convening authority agreed to withdraw and dismiss the remaining offenses (including attempted prostitution) and to limit Appellant's total confinement to a minimum of twenty four months and a maximum of sixty months for each offense, to run concurrently.[3] In a post-trial affidavit, trial defense counsel stated that he advised Appellant that the attempted prostitution offense could be "considered as a sex offense" and that if Appellant was convicted of this offense, he could be subject to mandatory sex offender registration.

During the providence inquiry conducted on October 18, 2022, Appellant affirmed that trial defense counsel had explained the waiver provision; he understood it may

---

[3] The plea agreement also provided that a dishonorable discharge and reduction to E-1 "will be adjudged," "[f]orfeitures may be adjudged," and "[n]o fine shall be adjudged."

preclude any appellate court from determining if he was entitled to relief based upon such a motion; no one forced him to agree to this provision; and he freely and voluntarily entered into this term in order to get the benefit of the plea agreement. Trial defense counsel stated that the waiver provision originated with the defense.

The military judge questioned Appellant about the impact of his plea on previously litigated motions, including UCI:

> [MJ]: So there were some motions that were previously litigated in this court-martial. There was a motion to dismiss for unlawful command influence; a motion to preclude evidence pursuant to M.R.E. 404(b); a motion to get you released from pre-trial confinement; and a motion to compel experts; and, finally, a motion to suppress evidence that was seized when the investigators did their search.
>
> Do you understand that by this provision in your agreement, you're waiving your right to appellate review of these issues?
>
> [APP]: Yes, Your Honor.
>
> [MJ]: Do you agree with that, [trial defense counsel]?
>
> [TDC]: Yes, Your Honor.

After confirming that he understood his guilty plea also gave up the right to bring certain waivable motions that had not been raised, Appellant affirmed that he did not have any questions about the "waive all waivable motions" provision; he understood he would be bound by the terms of the plea agreement; he had adequate time to discuss the agreement with his counsel; he was satisfied with trial defense counsel's advice; he entered into the agreement of his own free will; he had no questions about the agreement; he fully understood its terms and how they would affect his case; and he was pleading guilty both in the hope that he would receive a lighter sentence and because he was in fact guilty. Finally, trial defense counsel affirmed his agreement with the military judge's interpretation of the plea.

On appeal, Appellant submitted a post-trial affidavit stating that his counsel advised him that the guilty plea would not waive appellate review of the UCI issue and that he would not have pleaded guilty if it were not for this assurance. Appellant's trial defense counsel also submitted a post-trial affidavit confirming that he had told Appellant "that the UCI issue was preserved and would be reviewed" and that trial defense counsel did not believe the UCI motion was waivable.

### *The NMCCA's Opinion*

On appeal to the NMCCA, Appellant argued the Government failed to prove beyond a reasonable doubt that UCI did not affect the court-martial. He also argued trial defense counsel rendered ineffective assistance of counsel in various ways, including (1) negotiating a plea agreement to avoid sex offender registration on the prostitution offense even though registration was not required, and (2) in the event the court determined the UCI claim was waived, advising Appellant to waive all waivable motions, including UCI.

The NMCCA held that Appellant waived his UCI claim, despite Appellant's desire to preserve the issue, and even if not waived, the Government proved beyond a reasonable doubt that the UCI did not materially prejudice Appellant's rights. *United States v. Suarez*, No. NMCCA 202300049, 2024 CCA LEXIS 348, at *11-16, 2024 WL 3911929, at *4-6 (N-M. Ct. Crim. App. Aug. 23, 2024) (unpublished). As to the ineffective assistance claim, the NMCCA concluded trial defense counsel was deficient in both respects, but Appellant failed to show he was prejudiced. *Id*. at *25-29, 2024 WL 3911929, at *9-10.

### **II. Waiver of UCI**

We first address the specified issue: did Appellant waive review of the question whether UCI affected his court-martial? We hold Appellant waived review of his UCI claim by entering into a plea agreement with a "waive all waivable motions" provision and affirming during the providence inquiry his understanding that the provision waived

appellate review of his UCI claim. Because we conclude Appellant waived review of his UCI claim, we do not reach the first granted issue, whether the UCI affected Appellant's court-martial.

### A. Standard of review and applicable law

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). However, "[t]here is 'a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or privilege.'" *United States v. Smith*, 85 M.J. 283, 287 (C.A.A.F. 2024) (quoting *United States v. Sweeney*, 70 M.J. 296, 303-04 (C.A.A.F. 2011)).

"We review whether an appellant has waived an issue, a question of law, de novo." *United States v. Givens*, 82 M.J. 211, 215 (C.A.A.F. 2022). Whether a waiver of a right was "knowing and intelligent" is "a question of law [assessed] under a de novo standard of review." *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005). The voluntariness of a waiver is also reviewed de novo; voluntariness "'is measured by reference to the surrounding circumstances.'" *United States v. Hasan*, 84 M.J. 181, 198 (C.A.A.F. 2024) (citation omitted). "When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).

### B. Discussion

Appellant's unconditional guilty plea waived appellate review of his UCI claim. "An unconditional guilty plea generally waives all pretrial and trial defects that are not jurisdictional or a deprivation of due process of law." *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) (citation omitted); *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010) ("An unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings."). The plea agreement in this case included a "waive

all waivable motions" provision originated by the defense. The military judge conducted a thorough inquiry into Appellant's understanding of, and agreement with, the terms of the agreement in accordance with Rule for Courts-Martial 910(f)(4) and specifically advised Appellant the waiver provision would waive appellate review of his UCI claim. In response, Appellant unequivocally stated his understanding of the term, and trial defense counsel agreed with the military judge's interpretation of the effect of the term.

We conclude Appellant affirmatively, knowingly, and intentionally waived the UCI claim by negotiating and entering into the plea agreement. We reach this conclusion notwithstanding Appellant's post-trial affidavit stating that trial defense counsel assured him his guilty plea would not waive the UCI issue and averring he would not have pled guilty but for that assurance. Similarly, trial defense counsel's post-trial affidavit acknowledged he advised Appellant "that the UCI issue was preserved and would be reviewed," and stated that he did not intend to waive the UCI motion and did not believe it was waivable.

Although the post-trial affidavits provide "some affirmative indication" that Appellant did not understand the waiver provision, *see United States v. Weasler*, 43 M.J. 15, 19 (C.A.A.F. 1995) (quoting *Mezzanatto*, 513 U.S. at 210), the surrounding circumstances convince us his waiver was knowing and voluntary. "In the military justice system, an accused's 'misunderstanding as to a material term' in a plea agreement invalidates a plea." *Bradley*, 68 M.J. at 285 (Effron, C.J., concurring in result) (quoting *United States v. Smith*, 56 M.J. 271, 273 (C.A.A.F. 2002)). Here, even if Appellant was erroneously advised by trial defense counsel regarding the effect of the plea agreement on his UCI claim, he was accurately advised by the military judge during the providence inquiry and he affirmed that he understood the meaning and effect of the waiver provision and had entered into the agreement freely and voluntarily. *See, e.g.*, *id.* at 282 (finding the accused's unconditional guilty plea waived objection to trial counsel remaining on the case even though there was evidence that the civilian defense

counsel believed the guilty plea did not waive review of the objection). Under these circumstances, the waiver was both knowing and voluntary. Accordingly, we hold Appellant waived his UCI claim.

In reaching this result, we reject Appellant's contention that adjudicative UCI—that is, command interference with witnesses, judges, members, or counsel—can never be waived. "Unlawful command influence is generally reviewed as an accusatory (preferral, forwarding, and referral of charges) or adjudicative (interference with witnesses, judges, members, and counsel) claim." *Givens*, 82 M.J. at 215. In *Weasler*, we held that a "pretrial agreement initiated by appellant waived any objection to improper interference with the preferral and referral of charges." 43 M.J. at 16; *see id.* at 18 ("This case does not involve the adjudicative process."). The NMCCA subsequently extended *Weasler's* holding, ruling that an accused may waive adjudicative UCI to secure the benefits of a plea agreement. *United States v. Gattis,* 81 M.J. 748, 755 n.35 (N-M. Ct. Crim. App. 2021).[4]

Quoting *United States v. Day,* 83 M.J. 53, 56 (C.A.A.F. 2022), Appellant argues this Court should not extend *Weasler's* holding to adjudicative UCI because adjudicative UCI tends to deprive servicemembers of due process of law and "[a]n unconditional guilty plea does not waive defects resulting in a 'deprivation of due process of law.'" "'Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.'" *United States v. Harcrow*,

---

[4] A few years earlier, the United States Air Force Court of Criminal Appeals reached a different result. *See United States v. Hill*, No. ACM 38979, 2017 CCA LEXIS 477, at *8, 2017 WL 3309663, at *2 (A.F. Ct. Crim. App. July 12, 2017) (unpublished) (holding that "claims of [UCI] that interfere with the adjudicative process may not be waived").

66 M.J. 154, 156 (C.A.A.F. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

The right at stake in this case is the right to a proceeding free from the taint of UCI surrounding Appellant's apprehension and the subsequent investigation and prosecution of his case. We note that Appellant received some relief in the form of command-implemented remedial measures even before he filed his UCI motion.[5] Then, after the motion was litigated, two military judges ordered additional remedies to cure any lingering UCI.[6] Although the convening authority did not issue the military judge-ordered directive encouraging members of the command to serve as witnesses in support of Appellant without fear of repercussions, Appellant did not attempt to enforce this remedy in the nearly three months that elapsed between the date the military judge ordered it and the date Appellant entered his pleas. *Suarez*, 2024 CCA LEXIS 348, at *15, 2024 WL 3911929, at *6. Additionally, the remedies concerning the composition and voir dire of the panel were never implemented because Appellant elected to plead guilty and forgo his right to a court-martial composed of a panel of members. But these remedies were still available to him, and had Appellant contested the charges, he could have availed himself of the military judge-ordered remedies. Instead, after being advised by the military judge that his guilty plea

---

[5] As noted above, the command-initiated remedies included removal of LtCol W as the convening authority for Appellant's case, a command investigation into the circumstances of Appellant's apprehension, and removal of LtCol W and SgtMaj C from their battalion leadership positions.

[6] The military judges ordered the convening authority to issue a directive encouraging members of the command to speak as witnesses in support of Appellant without fear of reprisal, authorized liberal voir dire of the members, and provided that no member could come from the battalion. *Cf. United States v. Mizgala*, 61 M.J. 122, 126 (C.A.A.F. 2005) (holding that an unconditional guilty plea did not waive review of an "unsuccessfully" litigated Article 10, UCMJ, 10 U.S.C. § 810 (2000), speedy trial motion where the military judge did not provide the accused any relief for the speedy trial claim).

would waive the UCI claim,[7] Appellant entered his plea. Under these circumstances, we agree with the lower court's conclusion that the unconditional guilty plea waived adjudicative UCI. As the lower court reasoned:

> In the absence of an explicit prohibition, a party may knowingly and voluntarily waive rights in a plea agreement. Although the President has prohibited the waiver of certain fundamental rights in a plea agreement, the right to have proceedings free from UCI is not among them. By negotiating and entering into a plea agreement after the UCI motion was heard, Appellant's actions leave us satisfied he affirmatively, knowingly and consciously waived the UCI claim in his case. Therefore, based on the totality of the record before us we find Appellant intentionally relinquished a known right, leaving no error to correct on appeal.

*Id.* at *11, 2024 WL 3911929, at *4 (footnotes omitted).

### III. Ineffective Assistance of Counsel

Having determined that Appellant waived UCI, thereby mooting the first granted issue, we turn to the second granted issue: whether Appellant was prejudiced by trial defense counsel's deficient performance in advising him his guilty plea would avoid sex offender registration and would not waive UCI. Because the NMCCA did not apply the correct legal principles in concluding there was no prejudice, we set aside the lower court's decision and remand for further proceedings in accordance with this opinion.

### A. Standard of review and applicable law

We review ineffective assistance of counsel claims de novo. *United States v. Metz*, 84 M.J. 421, 428-29 (C.A.A.F. 2024). "Under *Strickland*, an appellant bears the burden of demonstrating that (a) defense counsel's performance was deficient, and (b) this deficient performance was

---

[7] *Cf. Day,* 83 M.J. at 56-57 (holding that the appellant's unconditional guilty plea with a "waive all waivable motions" provision did not waive a motion for failure to state an offense where "the military judge unambiguously advised Appellant that a motion to dismiss for failure to state an offense is not waivable").

prejudicial." *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee v. United States*, 582 U.S. 357, 364 (2017) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000)). Instead, "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Furth*, 81 M.J. at 117; *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008). The prejudice test for ineffective assistance of counsel in the guilty plea context—whether there is a reasonable probability that, but for counsel's errors, Appellant would have pleaded not guilty—is an objective test which we review de novo. *Furth*, 81 M.J. at 117.

"[S]tanding alone, an appellant's '*post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies' are not enough to establish prejudice." *Id.* at 117 (alteration in original) (quoting *Lee*, 582 U.S. at 369). The Court "must also 'look to contemporaneous evidence to substantiate [an appellant's] expressed preferences,'" because "'the [appellant] has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true.'" *Id.* (alterations in original) (first quoting *Lee*, 582 U.S. at 369; and then quoting *United States v. Murillo,* 927 F.3d 808, 815 (4th Cir. 2019)).

## B. Discussion

The NMCCA found "nothing in the record to indicate that, but for his counsels' alleged error, Appellant would not have pleaded guilty and would have insisted on going to trial." *Suarez*, 2024 CCA LEXIS 348, at *22, 2024 WL 3911929, at *8. Turning to the specific alleged deficiencies,

the court held trial defense counsel was deficient in negotiating a plea agreement to avoid sex offender registration, which was not required by any of the charged offenses, but Appellant could not establish prejudice because he could not show "the plea agreement reached would have been more beneficial (e.g. less confinement time or some other bargained for benefit) without the negotiation related to the attempted prostitution charge." *Id.* at *25-26, 2024 WL 3911929, at *9. Similarly, the court found trial defense counsel's "understanding and explanation of the scope of what the 'waive all waivable motions' provision covered was below the standard expected and was deficient" but concluded the deficiency "did not adversely impact Appellant" because "the Government proved beyond a reasonable doubt that the UCI did not affect the proceedings." *Id.* at *29, 2024 WL 3911929, at *10.

The NMCCA made two significant errors in its prejudice analysis. First, the finding that "nothing in the record" demonstrates prejudice is clearly erroneous. Second, the lower court *articulated* the correct prejudice standard but then erred when it *applied* a different standard, concluding as a matter of law that there was no prejudice because Appellant would not have fared better absent trial defense counsel's advice.

With respect to the first error, the post-trial affidavits from Appellant and trial defense counsel support Appellant's claim he would not have pled guilty but for trial defense counsel's advice. Appellant's post-trial affidavit states that he decided to plead guilty in part because trial defense counsel had advised him his guilty plea would avoid the risk of sex offender registration. He averred:

> I did not want to plead guilty. I did not think 5 years of confinement was a good deal. But I also did not trust that I would get a fair trial. . . . Additionally, I was charged with prostitution and I did not want to risk registering as a sex offender as my defense counsel told me I would have to. Weighing these factors, I reluctantly decided to plead guilty to the drug charges.

Appellant averred his decision was also influenced by trial defense counsel's advice that a guilty plea would not waive UCI. According to Appellant:

> I asked my trial counsel if pleading guilty would prevent the appellate court from deciding the unlawful command influence issue. One counsel assured me that the court would still review the issue and pleading guilty does not prevent the appellate court from deciding differently than the judge. This was very important to me and I would not have pled guilty without knowing that I could appeal the judge's unlawful command influence ruling.

While Appellant's post-trial affidavit, standing alone, would be insufficient to establish prejudice, *Furth*, 81 M.J. at 117, it does not stand alone. Trial defense counsel's affidavit confirms that he advised Appellant the attempted prostitution offense could be "considered as a sex offense" subjecting Appellant to mandatory sex offender registration, which "was something that we wanted to avoid." Therefore, trial defense counsel advised "that it was prudent to accept a plea agreement that would limit his risk to sex offender registration and limit his risk to more confinement time."

Trial defense counsel also corroborated Appellant's reliance on his advice that a guilty plea would not waive UCI, stating:

> Prior to entering into the plea agreement, [Appellant] asked if the military judge's denial of the UCI motion would be reviewed on appeal. I advised [Appellant] that the UCI issue was preserved and would be reviewed. . . . I do not remember, nor did I intend, waiving the UCI motion as the UCI motion that I raised was unable to be waived.

Therefore, the lower court's finding that nothing in the record demonstrates Appellant would not have pled guilty but for trial defense counsel's erroneous advice is clearly erroneous.

With respect to the second error, the court held Appellant could not establish prejudice as a result of trial defense counsel's advice because he could not show "the convening authority would have accepted less than 60 months regardless of trial counsel's advice or negotiation" concerning sex offender registration or that the UCI adversely affected the proceedings. *Suarez*, 2024 CCA LEXIS 348, at *26, 2024 WL 3911929, at *9. As noted above, the relevant question is not whether Appellant would have achieved a better result absent the erroneous advice but whether he would have chosen to plead guilty in the first place. *Lee*, 582 U.S. at 364. The NMCCA's prejudice analysis applied incorrect legal principles and failed to address whether there was a "reasonable probability that, but for counsel's errors, [Appellant] would not have pleaded guilty and would have insisted on going to trial." *Lee*, at 364-65 (internal quotation marks omitted) (citation omitted). Accordingly, we set aside the lower court's decision and remand for a new Article 66, UCMJ, 10 U.S.C. § 866 (Supp. II 2019-2021), review applying correct legal principles.

## IV. Judgment

We answer the specified issue in the affirmative, thereby mooting the first assigned issue. We decline to answer the second assigned issue. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The case is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for further proceedings in accordance with this opinion. A hearing is authorized under Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3) (2018), if the lower court determines that it is necessary to further develop the record.